Bandstra, J.
 

 In this case, we are asked to decide whether, in a child support modification proceeding, a payer of child support can be compelled to provide to the friend of the court (FOC) unredacted joint income tax returns and W-2 forms of a nonparty current spouse on the basis of an argument by the payer’s former wife that the payer (i.e., her former husband) is hiding income by having it attributed to his current wife. Because the trial court had sufficient reason to believe that there might be some diversion of income from the former husband to the current wife to avoid child support obligations, we conclude that the trial court did not abuse its discretion in
 
 *371
 
 ordering the former husband to produce his current wife’s income tax returns and W-2 forms to the FOC. Accordingly, we affirm the trial court’s order.
 

 i
 

 When plaintiff Nancy J. Carr, formerly known as Nancy J. Pott (hereinafter plaintiff) and defendant Albert Pott (hereinafter defendant) divorced in 1987, defendant was ordered to pay child support for the couple’s children. In 1996, plaintiff requested a review of the child support payments and the FOC, seeking to investigate defendant’s income, served defendant with an “Interrogatories and Request for the Production of Documents.” Although defendant filed answers to the interrogatories, he did not answer questions about his household furnishings, living expenses, current debt, charge accounts, and bank accounts. Defendant provided the FOC with W-2 forms for 1993 to 1996, his most recent pay stubs, and joint income tax returns for 1993 to 1995. However, defendant redacted information about the income of his wife, Patty Pott, on the joint income tax returns.
 

 The foc filed a motion to compel defendant to answer the remaining questions in the interrogatories. At the hearing regarding the FOC’s motion, plaintiff contended that defendant was diverting income to his present wife, Patty Pott, in order to avoid increased child support payments. Plaintiff produced a copy of defendant’s 1995 joint tax return, which had been provided to plaintiff by the FOC, showing that the gross income of defendant and Patty Pott was approximately $178,000. According to defendant, his 1995 income was about $58,000, which would mean that Patty Pott’s income was about $120,000.
 

 
 *372
 
 Defendant testified that he was the president and a member of the board of directors of UCOM, Inc., a small manufacturing company. According to defendant, his salary is set by the UCOM board of directors. Defendant further testified that Patty Pott works in an administrative capacity for UCOM, that she is also the president of Development One, a real estate development corporation that leases a building to UCOM, and that she is also the president of Work Force Plus, a company that supplies temporary employees to businesses, including UCOM. According to defendant, a controlling interest of eighty percent of the stock of Work Force Plus is owned by a person other than Patty Pott, and eighty percent of the stock of UCOM is owned by someone other than defendant or Patty Pott. Defendant testified that he owned no stock in Work Force Plus, UCOM, or any other company, except for the stock in his pension plan. Defendant and Patty Pott also drive company vehicles supplied by UCOM and Work Force Plus, respectively.
 

 At the conclusion of the hearing, the trial court opined that the “very closely interlocking series of business transactions” between UCOM, Work Force Plus, and Development One raised a concern that defendant might be diverting some of his income to Patty Pott so as to avoid child support obligations. The court found defendant to be “evasive” in his testimony. Subsequently, the trial court ordered defendant to produce Patty Pott’s W-2 forms and her 1993 - 1996 income tax returns under seal to the FOC. The order stated that the FOC “shall not disclose to anyone” the information contained in the W-2 forms and the tax returns.
 

 
 *373
 
 Following a denial by the trial court of a motion to stay its order, this Court granted defendant’s application for leave to appeal in Docket No. 207214 and granted Patty Pott’s complaint for superintending control in Docket No. 207128. This Court stayed the order regarding the motion to compel answers to interrogatories, including the production of Patty Pott’s W-2 forms and income tax returns, and consolidated Docket No. 207214 with Docket No. 207128. On appeal, defendant and Patty Pott raise the same issues.
 
 [1]
 

 n
 

 A trial court’s decision to grant or deny discovery is reviewed by this Court for an abuse of discretion.
 
 Reed Dairy Farm v Consumers Power Co,
 
 227 Mich App 614, 616; 576 NW2d 709 (1998). Statutory interpretation is a question of law that is reviewed de novo on appeal.
 
 Oakland Co Bd of Co Rd Comm’rs v Michigan Property & Casualty Guaranty Ass’n,
 
 456 Mich 590, 610; 575 NW2d 751 (1998).
 

 Defendant and Patty Pott argue that the trial court order compelling the production of income tax returns and W-2 forms of Patty Pott is in violation of federal law. We disagree. The federal law in question, 26 USC 6103, provides in relevant part:
 

 6103. Confidentiality and disclosure of returns and return information.
 

 (a) General rule.—Returns and return information shall be confidential, and except as authorized by this title—
 

 (1) no officer or employee of the United States,
 

 
 *374
 
 (2) no officer or employee of any State, any local child support enforcement agency, or any local agency administering a program listed in subsection (1)(7)(D) who has or had access to returns or return information under this section, and
 

 (3) no other person (or officer or employee thereof) who has or had access to returns or return information under subsection (e)(l)(D)(iii), paragraph (6), (12), or (16) of subsection (1), paragraph (2) or (4)(B) of subsection (m), or subsection (n),
 

 shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section. For purposes of this subsection, the term “officer or employee” includes a former officer or employee.
 

 (1) Disclosure of returns and return information for purposes other than tax administration.
 

 (6) Disclosure of return information to Federal, State, or local child support enforcement agencies.
 

 (A) Return information from Internal Revenue Service.— The Secretary may, upon written request, disclose to the appropriate Federal, State, or local child support enforcement agency—•
 

 (i) available return information from the master files of the Internal Revenue Service relating to the social security account number (or numbers, if the individual involved has more than one such number), address, filing status, amounts and nature of income, and the number of dependents reported on any return filed by, or with respect to, any individual with respect to whom child support obligations are sought to be established or enforced pursuant to the provisions of part D of title IV of the Social Security Act and with respect to any individual to whom such support obligations are owing, and
 

 
 *375
 
 (ñ) available return information reflected on any return filed by, or with respect to, any individual described in clause (i) relating to the amount of such individual’s gross income (as defined in section 61) or consisting of the names and addresses of payors of such income and the names of any dependents reported on such return, but only if such return information is not reasonably available from any other source.
 

 Although defendant and Patty Pott claim that this statute prohibits a court from compelling a taxpayer to produce income tax returns, we conclude otherwise. Under the clear language of the statute,
 
 Western Michigan Univ Bd of Control v Michigan,
 
 455 Mich 531, 538; 565 NW2d 828 (1997), 26 USC 6103 only protects a taxpayer against a government employee’s disclosure of tax returns, except in certain circumstances, and does not prevent a court in a discovery proceeding from ordering that a taxpayer produce tax returns and return information. Thus, 26 USC 6103 is inapplicable to the present case because this case does not involve the release of tax returns by a government official or employee.
 

 Further, this Court has previously concluded that, as a general rule, a party’s income tax returns are subject to discovery.
 
 Fassihi v St Mary Hosp,
 
 121 Mich App 11, 15; 328 NW2d 132 (1982). In addition, this Court concluded in
 
 Fassihi
 
 that a party to an action can be compelled to produce a joint tax return even if the other signatory to the return is not a party to the action. This Court stated that the joint tax returns could be subject to discovery if the party seeking the tax returns showed “good cause” for discovery of the records.
 
 Id.
 
 at 16.
 

 “Michigan has a strong historical commitment to a far-reaching, open and effective discovery practice.”
 
 *376
 

 Eyde v
 
 Eyde, 172 Mich App 49, 54; 431 NW2d 459 (1988); see, also, MCR 2.302(B)(1);
 
 Daniels v Allen Industries, Inc,
 
 391 Mich 398, 403; 216 NW2d 762 (1974);
 
 Reed Dairy, supra; Fassihi, supra
 
 at 15. “Discovery rules are to be liberally construed in order to further the ends of justice.”
 
 Eyde, supra
 
 at 54. The purpose of discovery is to simplify and clarify issues.
 
 Domako v Rowe,
 
 438 Mich 347, 360; 475 NW2d 30 (1991);
 
 Reed Dairy, supra.
 
 The discovery process “ ‘should promote the discovery of the facts and circumstances of a controversy, rather than aid in their concealment. ’ ”
 
 Domako, supra
 
 at 360, quoting
 
 Ewer v Dietrich,
 
 346 Mich 535, 542; 78 NW2d 97 (1956).
 

 In the present case, the trial court ordered that the income tax returns and W-2 forms of Patty Pott be produced by defendant after the court found that there may be some diversion of income from defendant to Patty Pott in order to avoid child support obligations. This finding was not clearly erroneous,
 
 Beason v Beason,
 
 435 Mich 791, 805; 460 NW2d 207 (1990) (“A finding is clearly erroneous if the appellate court, on all the evidence, is left with a definite and firm conviction that a mistake has been committed.”), and the trial court had sufficient reason to think that some diversion of income might be occurring.
 
 [2]
 
 The record reveals, as the trial court found, that “a very closely interlocking series of business transactions” existed between defendant and Patty Pott and that defendant might be using his position at UCOM to redirect his income to Patty Pott or through contracts
 
 *377
 
 defendant negotiated with Patty Pott’s companies, Work Force Plus and Development One. The trial court also found defendant to be “evasive” and not “candid and straightforward” regarding his answers to financial and employment questions. “This Court gives special deference to the trial court’s findings where they are based on the credibility of witnesses.”
 
 Stanton v Dachille,
 
 186 Mich App 247, 255; 463 NW2d 479 (1990).
 

 The income tax returns and W-2 forms of Patty Pott are relevant and necessary to determine whether defendant is diverting income to Patty Pott in order to avoid increased child support payments.
 
 Eyde, supra
 
 at 55.
 
 [3]
 
 Discovery of these documents is necessary to clarify defendant’s income and will aid in promoting the facts and circumstances of this controversy rather than aiding in their concealment.
 
 Domako, supra.
 
 The trial court has also appropriately ordered that the tax returns and the W-2 forms be opened only by the foc and that the foc shall not disclose to anyone the information provided by Patty Pott. We find it unnecessary to remand for an in camera hearing before the trial court pursuant to
 
 Fassihi, supra
 
 at 16. In
 
 Fassihi,
 
 the in camera hearing was ordered as a safeguard to preserve the nonparty’s legitimate expectation of privacy in the return. In the present case, the trial court has imposed sufficient safeguards in its order.
 

 
 *378
 
 in
 

 Defendant and Patty Pott assert that the trial court order compelling the production of income tax returns and W-2 forms of Patty Pott is contrary to the Michigan Child Support Formula Manual because the manual provides a procedure for calculating child support when joint tax returns are not available. We disagree. While the manual may indeed address situations where a joint tax return is not available, the manual says nothing about whether a court can compel a payer of child support to produce a joint tax return. The manual simply provides for situations when joint tax returns are available and when they are not. The availability of those returns depends on other law, which, as previously stated, requires production of the joint income tax information in this case. Further, while it is correct that Patty Pott’s legitimate income has no bearing on the child support question that is at issue here,
 
 Herman v Herman,
 
 109 Mich App 107, 110; 310 NW2d 911 (1981), the challenged court order does not seek to reveal her legitimate income. Instead, the issue here is whether defendant is wrongly diverting income to Patty Pott to avoid his legitimate child support obligations.
 

 We affirm the trial court order and dismiss the complaint for superintending control.
 

 [1]
 

 We note that Patty Pott’s issue regarding her right to seek superintending control is moot because we have granted her complaint for superintending control.
 

 [2]
 

 Although defendant and Patty Pott complain that plaintiff did not testify at the hearing, the trial court’s findings with respect to possible income diversion based on the information provided by plaintiff and defendant’s testimony were not clearly erroneous.
 
 Beason, supra.
 

 [3]
 

 In the divorce case of
 
 Eyde, supra,
 
 discovery of sensitive financial documents was ordered against a nonparty, the defendant-husband’s brother. Because the two brothers had numerous joint business ventures, the Court stated that the financial documents were “relevant and necessary” to determine the values of the defendant’s assets and the marital estate.
 
 Id.
 
 at 55.