# STATE OF MICHIGAN

# COURT OF APPEALS

DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Plaintiff,

v

GENESEE CIRCUIT JUDGE,

Defendant.

FOR PUBLICATION
December 20, 2016
9:05 a.m.

No. 334491
Genesee Circuit Court
LC No. 16-000000-AZ

Before: K. F. KELLY, P.J., and GLEICHER and SHAPIRO, JJ.

GLEICHER, J.

This action for superintending control arises from the Flint water crisis, a public health disaster catalyzed by the city of Flint's switch to the Flint River as its municipal water source. Due to the city's failure to utilize chemicals to control corrosion, lead leached from the pipes and contaminated the water. But toxic lead exposure was not the only scourge delivered upon Flint's people through their new water supply.

According to the Flint Water Advisory Task Force (Task Force) appointed by Governor Rick Snyder, "[t]he specific events that led to the water quality debacle, lead exposure, heightened *Legionella* susceptibility[.]" Flint Water Advisory Task Force, Final Report (March 2016), p 1, available at <https://www.michigan.gov/documents/snyder/ FWATF_FINAL_REPORT_21March2016_517805_7.pdf> (accessed December 15, 2016). *Legionella* is a bacterium that causes a severe, sometimes deadly respiratory disorder called Legionellosis or, colloquially, Legionnaire's Disease. See <http://www.cdc.gov/legionella/about/> (accessed December 15, 2016). Efforts made by the Michigan Department of Health and Human Services (MDHHS or DHHS) to investigate *Legionella* cases at McLaren-Flint Hospital were stymied when a Genesee Circuit judge issued three protective orders barring the DHHS from obtaining any information from McLaren relating to the hospital's *Legionella* outbreak. The protective orders, signed on June 27, August 17, and August 24, 2016, are the subjects of this action.

The circuit court entered the protective orders at the behest of three entities: McLaren-Flint Hospital, Todd F. Flood (the special assistant attorney general appointed by Attorney General Bill Schuette to investigate the water crisis), and the Genesee County prosecutor. These parties filed no petitions in the circuit court seeking the protective orders, the circuit court

created no record before issuing them, and no case numbers were assigned to any actions giving rise to the protective orders. Legal representatives of the DHHS were not invited to take part in the court's in-chambers discussions with counsel seeking the protective orders. This Court granted the DHHS's complaint for superintending control. *Dep't of Health & Human Servs v Genesee Circuit Judge*, unpublished order of the Court of Appeals, entered September 14, 2016 (Docket No. 334491).

According to the entities who successfully obtained them, the protective orders are unreviewable by this court under the rubric of superintending control. We need not decide that question, as we instead construe the DHHS's complaint in this Court as an application for leave, and grant it. We now vacate the protective orders.

I

The events leading to the Flint Water Crisis are the subject of numerous articles in the press, several comprehensive judicial opinions,[1] and the Task Force Final Report cited above. While the contamination of Flint's water began in April 2014, the events precipitating this action commenced two years later with a letter written by Dr. Eden Wells, the chief medical executive of the DHHS, to the president and CEO of McLaren-Flint Hospital. Dr. Wells explained that "the MDHHS has been supporting the Genesee County Health Department in an investigation of the increases in legionellosis reported between spring of 2014 and fall 2015," and that "[p]art of the public health response to legionellosis outbreaks involves review and documentation of remediation actions that were employed to minimize disease transmission." Information provided to the DHHS indicated that McLaren "has taken significant measures in an effort to prevent further disease transmission" in its facilities. The DHHS offered to work with McLaren to "better understand those actions and confirm their effectiveness as we enter the summer, when risk for *Legionella* transmission increases." Dr. Wells proposed a site visit led by the DHHS, the Genesee County Health Department, and "an expert team from the CDC [the federal Centers for Disease Control and Prevention], including epidemiologists, microbiologists, and environmental health experts."

Dr. Wells' letter outlined the objectives of the visit, which centered on minimizing the risk of *Legionella* transmission. She asked that a number of documents be produced during the site visit, including an audit of lab reports of positive *Legionella* tests, "[c]hemical, physical, and microbiological monitoring test results" conducted at McLaren, and a "description (with timeline) of *Legionella* remediation efforts."

McLaren-Flint responded in a May 6, 2016 letter signed by Walter P. Griffin, an attorney for the hospital. Griffin denied the DHHS's site visit request, explaining:

---

[1] *Concerned Pastors for Social Action v Khouri*, unpublished opinion of the District Court for the Eastern District of Michigan, entered July 7, 2016 (Docket No. 16-10277), *Mason v Lockwood, Andrews & Newman, Inc*, __ F3d __ (CA 6, 2016).

As you are aware, there are various lawsuits in which McLaren-Flint is a party and to which other departments, including your departments, are also named parties. Although the claims against each of the defendants in the suits may vary, the essence of the claims concern the issue of lead in the water in Genesee County and the incidents of increased Legionella in the water supplied to McLaren-Flint by the City of Flint. Based upon the allegations, it is impossible for McLaren-Flint to respond to your request since discovery is ongoing in these cases and conflicts may exist between your departments and McLaren-Flint. Further, discovery is subject to Federal and Circuit Court Rules.

Assistant Attorney General Darrin Fowler and Genesee County Chief Assistant Prosecuting Attorney Celeste Bell sought reconsideration of McLaren's position in a June 15, 2016 letter to Griffin. The attorneys acknowledged McLaren's liability concerns, but emphasized that "McLaren-Flint's paramount interest and responsibility is to take all steps necessary to ensure a safe and effective infection control program going forward." They urged that "[c]oncerns about potential financial liability related to past illnesses should not deter McLaren-Flint from taking prudent actions to ensure the health and safety of current and future patients." The letter pointed out that the Legislature has bestowed on the DHHS "broad discretion in responding to, and preventing, the spread of disease and other public health threats," and threatened "to seek judicial assistance" to achieve the goals outlined in the April letter.

On June 21, 2016, a different attorney, Michael P. Manley, penned McLaren-Flint's answer. Manley advised that his representation of the hospital encompassed both "the numerous civil claims" and "the criminal investigations" emanating from the Flint Water Crisis, and referenced a telephone call with Fowler. According to Manley, the Genesee County prosecutor's office had issued an investigative subpoena to McLaren, and McLaren-Flint planned to comply. The information provided pursuant to the subpoena "is deemed confidential," Manley related, and the prosecutor's office "has stated they will sign a protective order." Manley pledged that the prosecutor's office would "turn this information over to you" under the protective order. A list of items to be turned over, prepared by attorney Griffin, was attached to Manley's letter.[2]

The next development is shrouded in mystery. On June 27, 2016, Genesee Circuit Judge Geoffrey Neithercut issued the first of three protective orders. According to the brief filed by Judge Neithercut's counsel in this Court, the orders resulted from "various meetings and other communications." None of the "meetings and other communications" took place on the record. Nor did the proponents of the first protective order file a petition or other document setting forth good cause for the issuance of a protective order, or outlining the legal basis for such an order. Although the order limits the ability of the DHHS to obtain information from McLaren-Flint,

---

[2] The items included McLaren's 2001 policy for its water management program, a draft of its 2016 Water Safety & Management Plan, a copy of test results for *Legionella* in the water, and a map of McLaren Hospital.

counsel for the DHHS was not present at the meetings and had no notice of the private meetings between the circuit court and counsel for the protective order proponents.

The first paragraph of the June 27 protective order declares that the court "reviewed the Subpoena dated May 11, 2016, issued to McLaren-Flint Hospital," and then states that "all discovery material provided hereafter to the Genesee County Prosecutor's Office by McLaren-Flint . . . pursuant to . . . 'The City of Flint Water Crisis' shall be confidential. . . ." Although awkwardly worded, the next sentence purports to prohibit disclosure of the information and to "bind all other individuals, groups, institutions, agencies, or otherwise, who receive such confidential information" to the terms of the protective order. The order permitted McLaren-Flint to "designate any document it produces as confidential by stamping" it as such, thereby limiting its disclosure to the prosecutor's office "and investigative bodies under their control." The order continued:

> It is recognized by the Court there are multiple civil actions related to McLaren-Flint . . . and may be others filed hereafter in court[s] of competent jurisdiction to which this Protective Order precludes any party to any actions, naming McLaren-Flint . . . from receiving said materials which are marked "CONFIDENTIAL."

Three attorneys stipulated to and signed the protective order: Griffin, Manley, and Karen Hanson, a Genesee County assistant prosecutor.

On August 12, 2016, Fowler wrote to Judge Neithercut advising that "lawyers representing McLaren Flint and the Genesee County Prosecutors office will be contacting you soon to clarify the protective order[.]" Fowler suggested that the attorneys believed that the order "may impede McLaren's ability to provide" information to the DHHS regarding its *Legionella* investigation. He pressed the court to "clarify the order" by confirming that the DHHS should be allowed access to those documents in McLaren's possession necessary to the DHHS's investigation. Fowler pledged that the DHHS would adhere to the protective order "in regards to the limited use and sharing of this material," and would ensure that the CDC did the same.

McLaren-Flint and the prosecutor's office returned to Judge Neithercut, this time accompanied by Special Assistant Attorney General Flood or one of his delegates. Fowler was not invited; in fact, his request that the order be "clarified" by including the DHHS in the circle of document recipients was turned on its head. After another off-the-record, *ex parte* proceeding, Judge Neithercut ordered that all discovery material produced by McLaren-Flint would be deemed confidential and off-limits to the DHHS. This order delegated to both McLaren and the Genesee County prosecutor the power to "designate any document" or other item produced by McLaren as confidential. "Without prior written consent of the Genesee County Prosecutor's Office and/or the Attorney General – Office of Special Counsel and/or United States Attorney General," the order continued, "the [DHHS] and the Michigan Department of Environmental Quality (MDEQ) and/or it's [sic] associates, employees and/or contractors, shall be prohibited from receiving any discovery" of the information produced by McLaren "during the pendency of the Flint Water Crisis Investigation" and "subsequent indictments[.]"

-4-

In addition to prohibiting disclosure of public health-related data to the DHHS, Judge Neithercut directed the manner in which the *Legionella* investigation would proceed:

> Genesee County Health Department is directed to contact [the CDC] directly for assistance involving any and all issues, testing, analysis required involving any lead and/or legionella issues, water testing, and any other assistance needed for the City of Flint Water Crisis issues being investigated by the Genesee County Health Department during the pendency of the Flint Water Crisis as detailed above.

> McLaren Hospital is directed to contact Genesee County Health Department instead of MDHHS and/or MDEQ for any assistance required by McLaren Hospital involving any future issue relating to the City of Flint Water Crisis during the pendency of the Flint Water Crisis as detailed above.

> Without the prior written consent of the producing party and/or Genesee County Prosecutor's Office, no document may be shown to or discussed with any individuals, groups, institutions, agencies, or otherwise, who receive such confidential information except as provided by subsequent Order of the Court or by this Protective Order.

Attorneys Hanson, Griffin, Manley and Flood stipulated to and signed this protective order.

A third *ex parte* protective order followed fast on the heels of the second. The rationale for the issuance of the third protective order remains obscure. Once again, no record was created and no motions were filed. The third order, dated August 24, 2016, does not expressly revoke the second, but apparently operates in addition to it. The third order adds that "[w]ith the exception of automatic reporting requirements," the DHHS is prohibited from receiving any information absent the "prior written permission" of the entities named in the previous order. The order widens the scope of the previous protective order by excluding from DHHS view virtually any scientific records related to *Legionella*:

> This Protective Order specifically applies to, but is not limited to any and all disclosure of the above protected information by phone and/or in person, emails, letters, text messages, and includes: documents photographs, medical records, environmental data, samples, isolates (samples containing a single strain of concentrated *Legionella*)[,] DNA samples from water containing non-isolated genetic material from every bacteria present in the samples, audio or radio recordings and any other information in any form relating to the Flint Water Crisis investigation. . . .

The third order reiterates that the DHHS is not entitled to obtain the information it sought from McLaren, but allows for some limited administrative actions:

> Documents considered 'CONFIDENTIAL' or portions thereof, may only be provided and disclosed to the Genesee County Prosecutor's Office[,] their designees and investigative bodies under their control, which may include principals involved with Flint Water Crisis from the Attorney General's Office –

Special Prosecution Team investigating the Flint Water Crisis with Spec. AG Todd F. Flood as lead counsel and designees, the U.S. Attorney General [and] their designees, principals of the Genesee County Health Department and their designees. This permissible disclosure shall include all associates, paralegals and employees of the above named entities to the extent reasonably necessary to render professional services in the investigation(s).

McLaren-Flint Hospital, Genesee County Health Department and/or CDC are directed to continue any and all automatic reporting of any current and/or future lead and/or legionella cases as required by MDHHS to ensure proper services are provided to any and all victims of Lead and/or Legionella.

MDHHS is directed to continue any and all automatic reporting as required to McLaren-Flint Hospital, Genesee County Health Department and/or CDC any current and/or future lead and/or legionella cases to ensure proper services are provided to any and all victims of Lead and/or Legionella.

In bold print the order proclaims that it "does not prohibit MDHHS, [the Genesee County Health Department] and/or CDC and/or McLaren-Flint Hospital from working together and sharing information, investigation(s), etc on any issue not related to Lead and/or Legionella." The same group of lawyers signed and stipulated to this order.

One day after the third protective order issued, the DHHS filed this original action for superintending control against the sole named defendant, Genesee Circuit Judge Geoffrey L. Neithercut. This Court granted the complaint for superintending control and ordered that the case "shall proceed to a full hearing on the merits in the same manner as an appeal of right." All three proponents of the orders filed briefs in this Court, and their counsel participated in oral argument.

II

The DHHS challenges the protective orders on separation of powers grounds, while the parties defending the orders—Judge Neithercut, the Genesee County prosecutor, McLaren-Flint Hospital, and Special Assistant Attorney General Flood—insist that this Court lacks jurisdiction to consider the DHHS's argument. According to the proponents of the protective orders, the DHHS is not entitled to an order of superintending control because it has adequate alternate remedies: "intervention," an action for injunctive relief, or a motion to modify or quash the protective orders. Further, the proponents assert, good cause existed for the orders in that actions or inactions of the DHHS are part and parcel of ongoing criminal investigations. Allowing the DHHS access to the information, the proponents maintain, would be akin to allowing "the fox in the henhouse," undermining the criminal investigation and opening the door to fabricating or tampering with evidence.

Although we review for an abuse of discretion the circuit court's decision whether to grant a protective order, *In re Pott*, 234 Mich App 369, 373; 593 NW2d 685 (1999), we review de novo whether the circuit court applied the correct legal standards in determining whether to

-6-

issue a protective order in the first place. See *Beach v Lima Twp*, 489 Mich 99, 106; 802 NW2d 1 (2011).

## III

We dispense with the issue of our jurisdiction quite simply by construing the DHHS's motion for superintending control as an application for leave to appeal the three protective orders and by granting it. MCR 7.203(B)(1), MCR 7.216(A)(3) and (7).

## IV

The DHHS urges us to hold that Judge Neithercut overstepped constitutional boundaries by issuing orders that restricted the DHHS's ability to fulfill its statutory duties to protect the public health. The "widely accepted and venerable rule of constitutional avoidance" counsels that we first consider whether statutory or general law concepts are instead dispositive. *People v McKinley*, 496 Mich 410, 415; 852 NW2d 770 (2014). We hold that Judge Neithercut lacked any legal authority to issue the protective orders and vacate them on that ground.

We begin with Judge Neithercut's contention that he entered the protective orders pursuant to his authority under MCR 6.201(E). At oral argument, counsel for the proponents confirmed that MCR 6.201(E) supplied the sole legal basis for Judge Neithercut's actions.[3] We find this court rule inapposite. MRE 6.201 governs discovery in criminal cases. See also MCR 6.001(A) (stating that the rules in subchapters 6.000-6.500 "govern matters of procedure in criminal cases cognizable in the circuit courts and in courts of equivalent criminal jurisdiction."). Subpart (E) permits a court to enter a protective order in a criminal case "[o]n motion and a showing of good cause." The rule continues:

> In considering whether good cause exists, the court shall consider the parties' interests in a fair trial; the risk to any person of harm, undue annoyance, intimidation, embarrassment, or threats; the risk that evidence will be fabricated; and the need for secrecy regarding the identity of informants or other law enforcement matters. On motion, with notice to the other party, the court may permit the showing of good cause for a protective order to be made in camera. If the court grants a protective order, it must seal and preserve the record of the hearing for review in the event of an appeal.

The parties advise that there are ongoing criminal cases pending against nine individuals in connection with the Flint Water Crisis, and that some of these defendants were employed by the DHHS. But the protective orders were not issued in any pending criminal case. Even assuming that the relevant criminal cases are assigned to Judge Neithercut (no such evidence has been provided to us), we find it telling that the attorneys for the defendants in those cases were

---

[3] At argument, counsel for the proponents mentioned that the circuit court had issued an investigative subpoena to McLaren. The proponents begrudgingly conceded, however, that the protective orders were not entered as part of the investigative subpoena proceedings.

not notified of the protective order proceedings or invited to take part in them. Furthermore, none of the prerequisites for obtaining a protective order set forth in MCR 6.201(E) were fulfilled. No motions were filed, no showing of good cause was made, and no record was created. Therefore, we wholly reject the suggestion that MCR 6.201(E) supplied Judge Neithercut with authority to issue these protective orders.

The protective order proponents have identified no other legal standard that arguably might support entry of the three protective orders. The special prosecutor's delegate argued that the protective orders were necessary to protect the general "integrity" of the ongoing criminal prosecutions. When questioned, however, the attorney was unable to articulate any facts or legal theories illustrating how the DHHS's execution of its statutory duties might hinder the special prosecutor's ability to marshal or protect evidence. Nor are we able to understand how a public health investigation conducted by a state agency pursuant to statutory authority could possibly impair the ongoing prosecutions. Any evidence supporting this claim should have been presented to the circuit court, on the record, after notice to all interested parties, including the DHHS and the defendants in the criminal actions.

In addition to our finding that the circuit court lacked legal authority to issue the protective orders, we hold that the broad scope of the orders constituted an abuse of Judge Neithercut's discretion. We have no evidence that the circuit court exercised any discretion before issuing the protective orders. "[T]he failure to exercise discretion when called on to do so constitutes an abdication and hence an abuse of discretion." *People v Stafford*, 434 Mich 125, 134 n 4; 450 NW2d 559 (1990). Furthermore, an order restricting the flow of information to a state agency, or curtailing a state agency's ability to fulfill its statutory mandate, cannot rest on catchy phrases or naked assertions devoid of factual support. And nothing more than that has been presented to this Court.

We highlight that in vacating the three protective orders, we have not remanded for further proceedings. Because there were no proceedings of record in the circuit court, a remand is unwarranted.

We vacate the three protective orders. We do not retain jurisdiction.


/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Douglas B. Shapiro