GOOD v ARMSTRONG

Docket No. 168760. Submitted June 5, 1996, at Detroit. Decided July 26, 1996, at 9:20 A.M.

In 1988, Gaye Lynn Good brought an action in the Lenawee Circuit Court against Fred Armstrong, seeking a determination of the paternity of Donal F. Good. The defendant acknowledged paternity, and the court, Harvey A. Koselka, J., entered a judgment of paternity and ordered the defendant to pay child support of $57 a week. In 1993, the friend of the court recommended that the weekly support be increased to $161 on the basis that the defendant had received a settlement in a slip and fall case that was estimated to have netted him $26,667. When the court ordered the defendant to post an $8,000 bond, the defendant indicated that he had no money to post the bond because he had used almost $17,000 of the settlement to pay debts, had paid $2,800 of those funds to the friend of the court, and had used approximately $4,000 of those funds to purchase a motorcycle. The court then ordered that the motorcycle be put in storage until further order of the court. Following a hearing at which the defendant testified that the motorcycle had been torn down and that he did not know where the parts were and the plaintiff testified that she had seen the motorcycle intact after the court's preservation order, the court denied the defendant's objections to the recommended order of support. Subsequently, following a bench trial, the court found the defendant guilty of contempt for his failure to abide by the preservation order and sentenced him to thirty days in jail. The defendant appealed.

The Court of Appeals held:

1. MCL 552.602(c)(iii); MSA 25.164(2)(c)(iii) defines income for the purpose of determining the proper level of child support as including any money due to a person subject to a support order from any other person or legal entity. Accordingly, the defendant's settlement of his slip and fall case was income within the meaning of the statute. However, the settlement should be considered for the purpose of fixing the proper level of child support only where the court ordering support, in the exercise of its broad discretion, determines that support based on such a settlement would be fair, considering all relevant aspects of the payer's financial condition.

2. Under the facts of this case, the trial court did not abuse its discretion in treating the settlement as income for the purpose of modifying the child support order.

3. Because the defendant failed to present arguments in his brief on appeal relative to his conviction of contempt, that issue is deemed abandoned.

Affirmed.

*Travis Ballard,* for the defendant.

Before: CAVANAGH, P.J., and HOOD and J. J. McDON-ALD,* JJ.

PER CURIAM. Defendant appeals as of right the circuit court's approval of a child support recommendation of the friend of the court (FOC) that he pay $161 a week for 1993. Defendant also appeals as of right his conviction of contempt of court and his September 17, 1993, sentence of thirty days in jail for that conviction. We affirm.

Defendant acknowledged paternity of Donal Frederick Good on April 26, 1988. Donal's mother is Gaye Lynn Good. A judgment of paternity and support was filed on April 5, 1988. On July 5, 1988, a FOC recommendation that defendant pay $57 a week for child support was filed with the Lenawee Circuit Court. An order was entered in accordance with the recommendation. After the entry of that order, defendant's child support obligation was modified several times for various reasons.

On April 14, 1993, the FOC requested that the child support order be reviewed because defendant had recently received a large settlement for a slip and fall injury. The FOC recommendation indicated that the settlement gross amount was $40,000. Because

---

* Circuit judge, sitting on the Court of Appeals by assignment.

defendant did not provide documentation of attorney fees and costs, the FOC deducted one-third and found that defendant netted $26,667 from the settlement. Prorating this amount throughout 1993, the referee recommended that defendant pay $161 a week in accordance with the child support guidelines. On June 18, 1993, the court issued a child support order adopting the recommendation of the referee.

On July 19, 1993, defendant requested that the court reject the FOC recommendation and refer the matter back to the FOC for reevaluation. Defendant testified that he received a net amount of $25,000 on or about June 7, 1993, as a result of the personal injury settlement for pain and suffering. He stated that he had spent $16,887 of the money paying debts, had paid $2,800 to the FOC, and had spent the remainder, approximately $4,000, on a motorcycle for himself.[1] The court ordered defendant to post an $8,000 bond. Defendant notified the court that he did not have the money to post bond. When the court became apprised of how defendant spent the money, it ordered defendant to put the motorcycle immediately in storage and not to allow anyone, including himself, to use the vehicle until further order of the court.

The trial court held a hearing on August 31, 1993. Defendant testified that the motorcycle had been "tore down" and that he did not know the whereabouts of the parts. Good testified that she saw defendant's motorcycle intact after the previous court date. The court denied defendant's objections to the FOC recommendation and ordered that he appear on

---

[1] We note that we are unaware of the whereabouts of the $1,313 difference.

September 10, 1993, to show cause why he should not be held in contempt for failing to comply with the July 19, 1993, order to preserve the motorcycle.

Defendant pleaded not guilty of contempt. Trial on the matter commenced on September 17, 1993. Good testified that she observed the motorcycle at defendant's house a few days after July 19, 1993, and that defendant was removing the parts from the motorcycle. The court found defendant in contempt of its July 19, 1993, order and sentenced him to thirty days in jail.

Defendant appealed his contempt conviction and the lower court's approval of the FOC recommendation. On November 5, 1993, this Court granted defendant's motion for immediate consideration and his motion for a stay pending appeal. This Court also ordered that the amount of $57 a week in child support remain in effect.

Defendant's sole argument on appeal is that the trial court erred in finding that the cash settlement received in the unrelated personal injury action was income for purposes of determining his child support obligation. A trial court may modify a child support order upon a showing of a change of circumstances justifying modification. MCL 552.17; MSA 25.97; *Nellis v Nellis*, 211 Mich App 226, 229; 535 NW2d 240 (1995). Modification of a child support order is a matter within the sound discretion of the trial court. *Id.* The party appealing from the child support order bears the burden of showing clear abuse of discretion. *Wilkins v Wilkins*, 149 Mich App 779, 792; 386 NW2d 677 (1986). A trial court's findings of fact are reviewed under the clearly erroneous standard, but a court's ultimate disposition is subject to review de novo. *Nel-*

*lis, supra.* This Court will reverse a trial court's decision only when it is convinced it would have reached a different result. *Id.*

MCL 552.602(c); MSA 25.164(2)(c) defines the term "income" as any of the following:

> (i) Commissions, earnings, salaries, wages, and other income due or to be due in the future from his or her employer and successor employers.
>
> (ii) Any payment due or to be due in the future from a profit-sharing plan, pension plan, insurance contract, annuity, social security, unemployment compensation, supplemental unemployment benefits, and worker's compensation.
>
> (iii) *Any amount of money which is due to the payer under a support order as a debt* of any other individual, partnership, association, or private or public corporation, the United States or any federal agency, this state or any political subdivision of this state, any other state or a political subdivision of another state, or any other legal entity which is indebted to the payer. [Emphasis added.]

Although there are no cases that directly address the question posed by defendant, several opinions make the general statement that a parent's ability to pay, not just the parent's income, is relevant in determining an appropriate child support award. "[T]he trial court is not limited to consideration of the parent's actual income and may also look to the parent's unexercised ability to earn." *Wilkins, supra*, p 792. "The trial court properly considered appellant's assets and his income potential." *Travis v Travis*, 19 Mich App 128, 130; 172 NW2d 491 (1969). A trial court's failure to consider the defendant's financial status as a whole is clear error. *Cymbal v Cymbal*, 43 Mich App 566, 567; 204 NW2d 235 (1972). In *Malnar v Malnar*, 156 Mich App 534, 537-538; 401 NW2d 892 (1986), in determining whether interest from a spend-

thrift trust may be reached to satisfy a former wife's claim for child support, this Court stated:

> The elements of public policy which hold that a father has a legal duty to support his minor children outweigh the public policy that an owner of property may do with it as he pleases by imposing spendthrift restraints on the disposition of income from a spendthrift trust. *When the noncustodial parent has the financial means to support and maintain his own children, the source thereof is immaterial. While the duty imposed on the parent must be fair and not confiscatory, the parent's duty to support his children is not limited to his income.* In determining the amount of support, in addition to income, *all relevant aspects of the financial status of the person obligated to pay support must be considered.* [Emphasis added; citations omitted.]

In this case, certainly an amount became owed to defendant that constitutes "income" for the purposes of MCL 552.602(c)(iii); MSA 25.164(2)(c)(iii). However, as the *Malnar* Court reasoned, while a parent's duty to support his child is not limited to his income, the duty imposed must be fair and all relevant aspects of the parent's financial status must be considered. Therefore, the receipt of a personal injury settlement should not automatically determine the level of child support. Rather, the question whether a personal injury settlement should affect the level of child support depends on the particular facts of each case and, thus, should be decided case by case. We decline attempting any "bright line" rule to be applied in all instances.[2] We reiterate that, in determining the

---

[2] A personal injury settlement, as opposed to other types of settlements, poses a wide range of situations. For example, the personal injury at issue may range from a defendant with a sprained ankle to a quadriplegic. Because the quadriplegic may be required to spend money

amount of child support to be awarded, much discretion is vested in the trial court. *Wilkins, supra,* pp 791-792.

In the present case, defendant received a $40,000 settlement award. He testified that the net amount of the settlement award was $25,000. Defendant spent $16,887 of the money paying debts, $2,800 was paid to the FOC, and approximately $4,000 was spent on a motorcycle for the defendant. Defendant spent almost eighty-four percent of the $25,000 on items that were arguably not necessities.[3] Clearly, the purchase of a $4,000 motorcycle would not be characterized as an indispensable item. Given these facts, the duty imposed upon defendant to support his child is fair. Under these circumstances, we conclude that the trial court did not abuse its discretion in considering defendant's personal injury settlement as income for the purpose of modifying the child support order.

Additionally, because defendant failed to argue his contempt conviction in his brief, he has effectively abandoned this issue. *Froling v Carpenter,* 203 Mich App 368, 373; 512 NW2d 6 (1994).

Affirmed.

---

from the settlement on indispensable items such as a wheelchair, a handicap ramp, and so forth, income derived from personal injury settlements should not be automatically considered for purposes of modifying a child support order.

[3] If we used $23,687, which is the amount of money accounted for by defendant, this percentage rises to eighty-eight percent.