# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES MARTIN DELL'ORCO,

Plaintiff-Appellee,

v

LAURA ANNE DELL'ORCO, also known as
LAURA ANN ISOM,

Defendant-Appellant.

UNPUBLISHED
January 24, 2017

No. 329672
Washtenaw Circuit Court
LC No. 12-000074-DM

Before: M. J. Kelly, P.J., and Stephens and O'Brien, JJ.

PER CURIAM.

In this post-divorce child support case, defendant Laura Dell'Orco appeals by delayed leave granted[1] the trial court's order referring a child support determination to the Friend of the Court (FOC) and directing that a lump-sum annuity payment to plaintiff James Dell'Orco be excluded from the child support calculations.[2] For the reasons set forth below, we reverse the trial court's order and remand for further proceedings.

## I. BASIC FACTS

James and Laura married in 2005 and had one child. A consent judgment of divorce, which incorporated the terms of the parties' settlement agreement, was entered on November 20, 2012. The settlement agreement recited that James had a structured settlement annuity from which he received monthly payments of $3,250, and it specified that he would receive a final lump-sum payment of $439,750 in February of 2015. The parties agreed that James would retain the structured settlement annuity as separate property, and they further agreed to review child support payments after James received the final lump-sum payment.

---

[1] *Dell'Orco v Dell'Orco*, unpublished order of the Court of Appeals, entered February 22, 2016 (Docket No. 329672).

[2] For ease of reference the parties will be referred to by their first names.

In March of 2015, James filed a motion to modify child support because he no longer received monthly annuity payments. Laura noted that while the monthly payments had ceased, James had received the final lump-sum payment. She argued that the monthly annuity payments James had received were used to calculate previous child support payments and that his final lump-sum payment from the same annuity should be included in the calculations. James countered that the settlement agreement treated the annuity as separate property, and he represented that he had agreed to assume extra obligations—such as assuming both parties' credit card debt and paying for their child's college expenses—that he could not have otherwise assumed but for the lump-sum payment. Further, James asserted that case law supported the proposition that a structured settlement was a separate asset that should not be included in child support calculations. Stating that it was "convinced" by the case law and the terms of the settlement agreement, the trial court issued an order referring the matter to the FOC for an evaluation with an instruction to exclude James's lump-sum annuity payment from his income in calculating child support.

Laura filed a motion for reconsideration, asserting that the court had committed palpable error because annuities were designated as income in the Michigan Child Support Formula (MCSF) Manual and that James had misrepresented the case law cited during the motion hearing. Further, Laura contended that nothing in the settlement agreement suggested that there was a tradeoff between the parties in relation to child support payments and James's obligation to pay for their child's post-secondary education. The trial court denied the motion for reconsideration, reiterating that the parties had treated the annuity as James's separate property in the settlement agreement and stating that in exchange for retaining the annuity, James had agreed to assume the parties' credit card debt, student loan debt, and a debt to James's brother. After referral, the FOC calculated James's monthly child support obligation without including the final annuity payment in James's income. The trial court subsequently entered a child support order based upon the FOC's recommendation.

## II. ANALYSIS

### A. STANDARD OF REVIEW

Laura argues that the trial court erred in determining that James's lump-sum annuity payment was not income.[3] "Whether a trial court properly operated within the statutory framework relative to child support calculations and any deviation from the child support

---

[3] James asserts that Laura waived this issue by failing to request a de novo hearing within 21 days after the referee recommendation and by failing to appeal the resulting child support order. See MCL 552.507(4). However, Laura appealed the court order that referred the matter to the FOC instructing it to exclude James's final annuity payment from his income for purposes of calculating child support. Laura's challenge is to the trial court's referral order and not to the FOC's implementation of the court's order and the resulting child support order. Therefore, Laura preserved this issue for appellate review.

formula are reviewed de novo as questions of law." *Peterson v Peterson*, 272 Mich App 511, 516; 727 NW2d 393 (2006).

## B. ANALYSIS

A trial court must generally calculate child support payments according to the formula set forth in the MCSF Manual. MCL 552.605(2); *Shinkle v Shinkle (On Rehearing)*, 255 Mich App 221, 225; 663 NW2d 481 (2003). The court can deviate from the support formula only if it determines that applying the formula would be unjust or inappropriate and it sets forth certain determinations on the record. MCL 552.605(2). "Just as with a statute, courts must comply with the plain language of the MCSF, and may not read language into the MCSF that is not present." *Clarke v Clarke*, 297 Mich App 172, 179; 823 NW2d 318 (2012). "The first step in figuring each parent's support obligation is to determine both parents' individual incomes." 2013 MCSF 2. The MCSF Manual defines income to include, in relevant part, "[d]istributed . . . payments from . . . an annuity . . . ." 2013 MCSF 2.01(C)(3). Income also includes "[a]ny money or income due or owed by another individual, source of income, government, or other legal entity." 2013 MCSF 2.01(C)(9).

The final lump-sum annuity payment to James clearly falls under the above definitions of income because it is both a distributed payment from an annuity and an amount owed to James by a legal entity. See *Thompson v Merritt*, 192 Mich App 412, 418-419; 481 NW2d 735 (1991) (holding that an annuity payment is income as defined in the Support and Visitation Enforcement Act, MCL 552.601 *et seq.*, which contains a definition substantially similar to the one in the MCSF Manual). Thus, the final lump-sum payment from the annuity should have been included in the child support calculations.

The case law Laura relies upon bolsters this conclusion. In *Good v Armstrong*, 218 Mich App 1, 2-3; 554 NW2dd 14 (1996), the FOC reviewed an existing child support order because the defendant received a settlement for pain and suffering after sustaining a personal injury. The defendant contended that the court had erred by including the settlement in his income for the purposes of calculating child support. *Id.* at 4. The Court relied on one of the definitions of income set out in MCL 552.602(c)(*iii*), which at the time defined income as "[a]ny amount of money which is due to the payer under a support order as a debt . . . ." *Id.* at 5. The Court held that the settlement money was an amount owed to the defendant that constituted income for the purposes of MCL 552.602(c)(*iii*), but it cautioned that courts should exercise discretion, adding that "whether a personal injury settlement should affect the level of child support depends on the particular facts of each case . . . ." *Id.* at 6. The Court explained that personal injuries varied in severity, and a person rendered quadriplegic for example "may be required to spend money from the settlement on *indispensable items* such as a wheelchair, a handicap ramp, and so forth . . . ." *Id.* at 6 n 2 (emphasis added). James asserts that the final annuity payment is not income because pursuant to the settlement agreement, he used a portion of the payment to pay off both parties' debts and set aside money for their child's post-secondary education.[4] But debt payments and a

---

[4] It is unclear from the record exactly how much of the final lump-sum payment James used for these purposes.

post-secondary education savings fund are not indispensable items related to James's pain and suffering.[5]

James maintains that the definition of income under 2013 MCSF 2.01(C)(3) applies only to periodic payments from annuities and not the "res" or lump sum payment itself, which plaintiff characterizes as property or an asset. James cites *Borowsky v Borowsky*, 273 Mich App 666, 683; 733 NW2d 71 (2007), which provides that "[u]nder 2004 MCSF 2.08(A), '[n]on-income or low-income producing assets should be evaluated to establish a reasonable rate of expected return depending on the type and nature of the asset.' " But James assumes that the final lump-sum payment must be considered an asset rather than income. The lump-sum payment differed from the previous monthly payments only in its amount and the fact that it was the final payment. Thus, it was still a distributed payment from an annuity, which clearly falls under the definition of income in 2013 MCSF 2.01(C)(3). Additionally, it also fell within the definition of income for the purposes of 2013 MCSF 2.01(C)(9) because it was money due or owed to James from a legal entity.

James also argues that structured settlements are not taxable income under the Internal Revenue Code. But this point is immaterial because the definitions of income in the MCSF Manual govern, and it provides that income defined in the manual "will not be the same as that person's . . . net taxable income, or similar terms that describe income for other purposes." 2013 MCSF 2.01(A). Therefore, James's argument that the final annuity payment was not income as defined in the MCSF Manual lacks merit.

Next, James argues that the lump-sum annuity payment was property rather than income under the terms of the parties' settlement agreement. A settlement agreement is a binding contract governed by the legal principles applicable to contracts and contract interpretation. *Mikonczyk v Detroit Newspapers, Inc*, 238 Mich App 347, 349; 605 NW2d 360 (1999). This Court enforces contracts according to their terms and accords words and phrases their plain and ordinary meaning. *Holland v Trinity Health Care Corp*, 287 Mich App 524, 527; 791 NW2d 724 (2010). James is correct that the settlement agreement identified both the monthly annuity payments and the final lump-sum payment, and the agreement expressly stated that James's structured settlement annuity was his "separate property and will be retained by him." Courts are bound by property settlements reached through negotiation by the parties to a divorce absent fraud, duress, mutual mistake, or circumstances that prevented a party from understanding the nature and effect of the settlement. *Keyser v Keyser*, 182 Mich App 268, 269-270; 451 NW2d 587 (1990). But the settlement agreement makes it clear that the parties agreed that James's structured settlement was his separate property for the purposes of property division; they did not agree that the annuity was not income for the purposes of calculating child support.[6] Indeed, the

_____

[5] According to James's brief on appeal, the settlement related to the loss of family members in a house fire when he was a teenager. It is not clear from the record whether James sustained any physical injury from this incident.

[6] It is questionable whether and to what extent an agreement to exclude certain income from child support calculations would be enforceable. Courts strongly disfavor agreements that would

-4-

provision related to James's annuity never mentioned child support and was contained in section five of the agreement under the heading "PROPERTY SETTLEMENT." Thus, the provision relating to the annuity payments does not preclude the final annuity payment from factoring into child support calculations where the annuity payment is income as defined by the MCSF Manual.

Finally, James asserts that other provisions of the settlement agreement indicate that the parties did not intend the lump-sum payment to be included in child support calculations. James asserts that he voluntarily assumed many of Laura's debts and expenses and that he agreed to pay their minor child's college expenses. However, the terms of the settlement agreement do not indicate that there was any express agreement that James would assume these obligations in exchange for the final annuity payment being excluded from child support calculations. In fact, the settlement agreement specified that after the final annuity payment, the parties would review child support and plaintiff would pay a "new child support amount determined according to the State of Michigan Child Support Guidelines . . . ." In other words, the parties anticipated the need to review child support after the final annuity payment, but there is no evidence that they agreed to exclude the final annuity payment from James's income for purposes of calculating support.

Reversed and remanded for further proceedings consistent this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien

---

effectively limit a parent's obligation to pay child support because parents cannot bargain away their child's right to receive adequate support. *Holmes v Holmes*, 281 Mich App 575, 590; 760 NW2d 300 (2008).