**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED SEPTEMBER 12, 2001**

EDWARD BAUROTH and BARBARA
BAUROTH,

    Plaintiffs-Appellees,

v

No. 119370

JAMAL HAMMOUD and ENDOCRINE
CONSULTANTS OF MID-MICHIGAN,
P.C., a Michigan Professional
Corporation, Individually
and Jointly and Severally,

    Defendants-Appellants.

_____

PER CURIAM

The circuit court ordered that the plaintiffs could discover the defendants' financial assets in the course of this civil action. We reverse because such discovery is outside the scope allowed by MCR 2.302.

I

Plaintiff Barbara Bauroth was being treated by defendant Jamal Hammoud, M.D., for hyperthyroidism. He prescribed the

drug Tapazole, which, she alleges, caused her harm.  She sued, claiming that his actions and inactions constituted professional malpractice.[1]

The case-evaluation process described in MCR 2.403 produced an evaluation of $250,000.[2]  This amount exceeded the defendant's insurance coverage, which was $200,000/$600,000.[3]

The plaintiffs filed in circuit court a motion asking for an order requiring the defendants to disclose their assets.[4] They explained:

> That before Plaintiffs can make a valid and knowing acceptance or rejection of Mediation,[5] which might result in the settlement of this litigation, they must have the opportunity to review the net worth and/or assets and liabilities of Defendants in order to make a business judgment as to what monies may be available over and above any insurance coverage.

---

[1]  Ms. Bauroth's husband, Edward Bauroth, is also a plaintiff; he presents derivative claims.  A second defendant is Endocrine Consultants of Mid-Michigan, P.C., in which Dr. Hammoud practiced medicine.

[2] The facts pertaining to the case evaluation and to the defendants' insurance coverage are taken from the apparently undisputed statements of counsel in the circuit court and in this Court.

[3] The defendants explained in circuit court that their "insurance policy limits are $200,000 per incident/$600,000 aggregate."

[4] At the hearing on the motion, the plaintiffs also asked for an extension of the time limit, MCR 2.403(L)(1), for deciding whether to accept or reject the evaluation.

[5] In 2000, the name of the process described in MCR 2.403 was changed from "mediation" to "case evaluation."  The term "mediation" now applies to the process described in MCR 2.411.

In support of their motion, the plaintiffs relied upon *McLaren v Zeilinger*, 103 Mich App 22; 302 NW2d 583 (1981).

Responding to the motion, the defendants stated that they would neither accept the case evaluation, nor agree to pay any money toward a settlement. "Unless plaintiffs agree to dismiss this action without the payment of money, this matter will proceed to trial." The defendants asserted that their financial status was therefore irrelevant.

The circuit court granted the motion to compel disclosure.[6] On the representation by plaintiffs' counsel

---

[6] The circuit court's order provided that the defendants to disclose the following "forthwith":

> 1. A detailed, sworn, net-worth statement setting forth all of the assets and liabilities of both Defendants. And
>
> 2. The last five (5) years, Federal, State and Local Income Tax returns for both of the Defendants. And
>
> 3. Any and all financial statements prepared prior to the date hereof during the last two (2) years for any reason whatsoever of both Defendants. And
>
> 4. Such other and further information as will assist Plaintiffs in determining the true net worth and/or collect-ability of both of the Defendants. And
>
> 5. Both Defendants shall submit to a creditor's exam regarding the disclosure of the assets herein mentioned.

The order provided that the plaintiffs were to hold these materials in confidence, and use them for no purpose other than determining whether to accept the evaluation. The order further provided that the time for accepting or rejecting the

3

that he would delay the creditors' examination for thirty days, the circuit court denied the defendants' request for a stay.

The defendants applied to the Court of Appeals, which denied leave to appeal.[7] The Court also denied a stay.

When the defendants applied to this Court for leave to appeal, we issued a stay of the circuit court's order.[8] Today we reverse that order.

## II

The interpretation and application of a court rule presents a question of law that is reviewed de novo. *McAuley v General Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998).

## III

The general scope of permissible discovery is stated in MCR 2.302(B)(1):

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of another party, including the existence, description, nature, custody, condition, and location of books, documents, or other tangible things and the identity and location of persons having knowledge of a discoverable matter. It is

---

evaluation was extended sixty days after the date of the order.

[7] Unpublished order entered May 30, 2001 (Docket No. 233885).

[8] Unpublished order entered June 7, 2001 (Docket No. 119370).

4

not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

As indicated, the motion granted by the circuit court was premised on *McLaren*. In that case, which arose from a motor vehicle accident, the plaintiff sought to discover financial information about the defendant. The circuit court denied the defendant's objections to interrogatories, and the Court of Appeals affirmed. In the concluding paragraphs of its opinion, the Court explained that it was applying a "good cause" test:

> We believe that the test now utilized by the Supreme Court is whether plaintiff has "good cause" to have discovery of the extent and value of defendant's assets, and that the trial judge is vested with discretion to make that determination on a case by case basis. To hold otherwise would lead to incongruous results that we do not believe the Supreme Court intended.

> E.g., in this case, if, rather than submitting interrogatories to defendant, plaintiff had chosen to proceed under GCR 1963, 310, to require defendant to produce copies of his income tax returns, it would appear that if plaintiff satisfied the trial court there was good cause, defendant could have been required to produce such income tax returns, even though they were not admissible in evidence at trial nor relevant to the subject matter at trial.

> We believe the Supreme Court intended the same test, namely, "good cause" to apply to the scope of interrogatories as to the scope of production of documents.

> The question then is whether there is good cause to require defendant to answer these interrogatories. As indicated, we hold this decision was for the discretion of the trial judge,

5

and we find that, under the circumstances of this case, "good cause" encompasses the interrogatories regarding defendant's assets that are in dispute.

The circumstances to which we refer are that the recommendation of a mediation panel has placed a substantial value on plaintiff's damages, that there is a real possibility of a jury award exceeding the policy limits, and that discovery of defendant's assets could be a factor inducing settlement. *We do not hold that, as a general rule, a plaintiff in an automobile accident case will be entitled to discovery of defendant's assets.*

*On the contrary, we would expect that it will only be in the exceptional case that a plaintiff may have sufficient "good cause" to permit such discovery.*

Where sufficient good cause is present, a defendant's alleged right of privacy must give way. Consequently, we hold that the trial court's denial of defendant's motion was not clearly erroneous. [103 Mich App 31-32.]

As the Court of Appeals made clear in *McLaren*, that decision is based on the General Court Rules of 1963. The change effected by the Michigan Court Rules of 1985 is well explained in Dean & Longhofer, *Michigan Court Rules Practice*, § 2302.2, p 198:

With the adoption of MCR 2.302, which contains general provisions governing discovery as a whole, subtle changes were made in discovery practice that are not readily apparent from a reading of the individual rules. GCR 1963, 310 previously governed the production and discovery of documents and things. As the rule permitted such discovery only on motion and order of the court, and additionally adopted the restrictions of GCR 1963, 306.2, several Michigan cases concluded that a party must show "good cause" to obtain such discovery.

6

One of the principal reasons that the Michigan courts reached the conclusion that *good cause must be shown to conduct discovery was that the Michigan rules did not contain a comprehensive rule, similar to Federal Rule of Civil Procedure 26, setting forth standards and exceptions for the scope of discovery*. Rather, the Michigan scope of discovery provisions were contained in GCR 1963, 302.2, and several restrictions thereto were contained in GCR 1963, 306.2. This was true despite the fact that GCR 1963, 306.2 purported to govern only protective orders associated with the taking of depositions on oral examination. It is not hard to understand how the courts, considering standards for issuance of protective orders, could reach the conclusion that a party had to show good cause to acquire the discovery requested.

The adoption of MCR 2.302, and the elimination of the requirement for a motion and order prior to conducting discovery proceedings under MCR 2.310, have eliminated any requirement that a party show good cause for the discovery of particular information, documents, and the like. *MCR 2.302(B) now compiles all the Michigan rules restricting the scope of discovery into one rule.* [Emphasis supplied.]

As this treatise well states, the clarified text of the 1985 rules rendered obsolete the "good cause" approach that had been employed under the 1963 rules. With it, the rationale of *McLaren* likewise became obsolete.

Again, MCR 2.302(B)(1) sets the bounds of discovery in most civil actions. The rule allows discovery of matter that is "relevant to the subject matter involved in the pending action" or that "appears reasonably calculated to lead to the discovery of admissible evidence." Under the circumstances of this case, the financial information sought by the plaintiffs satisfies neither branch of MCR 2.302(B)(1).

7

For these reasons, we reverse the order of the circuit court requiring disclosure. We remand this case to the circuit court for further proceedings. MCR 7.302(F)(1).

CORRIGAN, C.J., and CAVANAGH, WEAVER, KELLY, TAYLOR, YOUNG, and MARKMAN, JJ., concurred.