SHINKLE v SHINKLE (ON REHEARING)

Docket No. 241222. Submitted December 3, 2002, at Lansing. Decided December 13, 2002, at 9:15 A.M. Vacated by order entered January 31, 2003. Decided on rehearing January 31, 2003, at 9:00 A.M.

The plaintiff, Norman D. Shinkle, and the defendant, Linda K. Shinkle (now Rodney), were divorced in 1998 in the Ingham Circuit Court. The plaintiff thereafter sought discovery of his former wife's antenuptial agreement with her present husband for purposes of determining the parties' child support obligations for their minor children. The defendant allegedly receives a monthly allowance from her present husband, purportedly to cover the couple's household expenses. It is undisputed that her new husband has no child support obligation regarding the minor children. The court, Richard J. Garcia, J., denied the discovery request on the basis that the antenuptial agreement was "not relevant and not reasonably calculated to lead to discoverable evidence." The plaintiff appealed by leave granted.

The Court of Appeals *held*:

The discovery of information in the defendant's antenuptial agreement with her new husband may be relevant for purposes of determining the defendant's actual or imputed income under the child support formula or in determining if there is a reason for deviating from the child support formula. Whether the alleged monetary allowance the defendant receives under her antenuptial agreement is a debt owed and thus income pursuant to the definition of income in the Michigan Child Support Formula Manual must be determined from the particular provisions of the antenuptial agreement. The agreement is relevant to the subject matter at issue and falls within Michigan's broad rules for discovery. The order denying discovery must be reversed and the matter must be remanded for further proceedings in accordance with the review procedure outlined by the Court of Appeals.

Reversed and remanded.

DIVORCE — CHILD SUPPORT — ANTENUPTIAL AGREEMENTS WITH CURRENT SPOUSES.

A divorced person's antenuptial agreement with the person's current spouse may be subject to limited discovery by the person's former

spouse relative to the calculation of the divorced parties' child support obligations; such limited discovery must be preceded by an in camera review and redaction by the trial court to avoid disclosure of irrelevant confidential arrangements between the married parties and of the separate financial information of the spouse not involved in the child support dispute.

*Mallory, Cunningham, Lapka & Scott, P.C.* (by *Keldon K. Scott* and *Janice K. Cunningham*), for the plaintiff.

*Sinas, Dramis, Brake, Boughton & McIntyre, P.C.* (by *Bernard F. Finn*), for the defendant.

ON REHEARING

Before: NEFF, P.J., and HOEKSTRA and O'CONNELL, JJ.

NEFF, P.J. In this postjudgment divorce action, plaintiff appeals by leave granted an order of the trial court denying his motion for discovery of an antenuptial agreement[1] between his former wife, Linda K. Shinkle (now Rodney), and her present husband, James Rodney,[2] as a factor in child support obligations for the parties' two minor children. We reverse and remand.

I

The parties divorced in 1998, and defendant married Rodney in June 2001. In December 2001, the trial

_____

[1] An antenuptial agreement is defined as "An agreement between prospective spouses made in contemplation of marriage and to be effective upon marriage." Black's Law Dictionary (6th ed). The terms "antenuptial agreement" and "prenuptial agreement" are synonymous.

[2] It is undisputed that Rodney has no obligation for child support in this case. His interest in this action pertains to his privacy concerns with respect to the antenuptial agreement.

court ordered a change of custody that resulted in split custody of the parties' two teenage sons. The court referred the issue of child support modification to the friend of the court for investigation and a recommendation. During the investigation by the friend of the court, defendant made reference to financial arrangements under her antenuptial agreement to the effect that she receives $50,000 a month from Rodney, purportedly to cover the couple's household expenses. The friend of the court conciliator rejected plaintiff's request to include the alleged $50,000 monthly allowance in calculating child support. The conciliator found that plaintiff failed to show any legal or factual basis for including the claimed money received under the antenuptial agreement as income, such as that defendant allegedly receives the money pursuant to a business arrangement with her husband rather than merely to cover her family's monthly budget for household expenditures.

Plaintiff filed a motion in the circuit court to compel production of defendant's antenuptial agreement to determine whether any money received under the agreement could be considered income for purposes of child support. At a hearing on the motion, the trial court asked plaintiff whether he could cite any case law stating that payments pursuant to a prenuptial agreement are considered income. Plaintiff responded in the negative, but argued that discovery of the agreement and its terms was necessary to determine what legal arguments could be made for including the payments as income. The trial court denied the motion, concluding that the antenuptial agreement was "not relevant and not reasonably calculated to lead to discoverable evidence."

II

This appeal presents an issue of first impression: whether, and to what extent, plaintiff is entitled to discover the provisions of defendant's antenuptial agreement with her new husband to potentially claim that money allocated to defendant under the agreement is properly a factor in calculating the parties' child support obligations. We hold that the antenuptial agreement is subject to limited discovery following an in camera review and redaction by the trial court to avoid disclosure of irrelevant confidential financial arrangements between defendant and her new husband and his separate financial information. The in camera review shall be conducted without counsel present, and the court shall issue an appropriate protection order limiting the use and subsequent disclosure of the information released. Discovery is limited to the terms of the agreement related to defendant's claimed monthly $50,000 allowance to determine whether the alleged allowance should be considered in establishing child support pursuant to the Michigan Child Support Formula Manual (West, 2001) (MCSF Manual).

III

This Court reviews a trial court's decision to grant or deny discovery for an abuse of discretion. *In re Pott*, 234 Mich App 369, 372; 593 NW2d 685 (1999). We review questions of law de novo. *Burba v Burba (After Remand)*, 461 Mich 637, 647; 610 NW2d 873 (2000). Preliminary questions of law affecting the admissibility of evidence are reviewed de novo. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

IV

Michigan has long supported a policy of far-reaching, open, and effective discovery practice. *Pott,* *supra* at 375-376. Discovery rules must be liberally construed to further the ends of justice. *Id.* at 376. In general, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . . It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." MCR 2.302(B)(1); *Bauroth v Hammoud,* 465 Mich 375, 378; 632 NW2d 496 (2001).

Defendant allegedly receives $50,000 a month under her antenuptial agreement with her new husband. The question is whether this claimed monthly receipt may be relevant to the parties' child support obligations, thereby justifying discovery of the specific terms of the antenuptial agreement.

The parents of a minor child have a duty to support that child. MCL 722.3; *Macomb Co Dep't of Social Services v Westerman,* 250 Mich App 372, 377; 645 NW2d 710 (2002). In determining the contributions to child support that divorced parents must make, courts are generally required to follow the formula set forth in the MCSF Manual. *Burba, supra* at 643-644. The formula is based on the needs of the child and the actual resources of each parent, including the factor of parental income. MCL 552.519(3)(a)(vi); MCSF Manual, *supra,* p VI; *Burba, supra.* "Actual resources" has been broadly applied to include certain parents' unexercised ability to pay child support. *Ghidotti v Bar-*

*ber*, 459 Mich 189, 198; 586 NW2d 883 (1998). A court may deviate from the support formula only if application of the formula would be unjust or inappropriate. MCL 552.605(2); *Burba, supra* at 643-644; *Ghidotti, supra* at 196.

Plaintiff argues that the discovery of information in defendant's antenuptial agreement with her new husband would be relevant for purposes of determining defendant's actual or imputed income under the child support formula or, alternatively, could be relevant in determining if there was a reason for deviating from the child support formula. We agree.

The MCSF Manual contains a nonexclusive list of the types of income that are considered in establishing child support. Included in the definition of income is:

> (iii) An amount of money that is *due to an individual as a debt* of another individual, partnership, association, or private or public corporation, the United States or a federal agency, this state or a political subdivision of this state, another state or a political subdivision of another state, or another legal entity that is indebted to the individual. [MCSF Manual, *supra*, § II(A), p 3 (emphasis added).]

The MCSF Manual definition of income is derived from statute. MCL 552.602(j).[3] The primary goal of statutory construction is to give effect to the intent of the Legislature. *Burba, supra* at 647. When a word is undefined in a statute, resort to the standard dictionary definition is an appropriate means of determining its common and approved usage. *Horace v Pontiac*, 456 Mich 744, 756; 575 NW2d 762 (1998). The word

---

[3] Further, the rules of statutory construction apply to administrative rules. *Port Huron v Amoco Oil Co, Inc*, 229 Mich App 616, 631; 583 NW2d 215 (1998).

"debt" is itself commonly understood to mean "something that is owed or that one is bound to pay to or perform for another" or "a liability or obligation to pay or render something." *Random House Webster's College Dictionary* (2d ed, 1997).

In *Good v Armstrong*, 218 Mich App 1, 5-6; 554 NW2d 14 (1996), this Court concluded that a personal injury settlement was an amount "owed" to the defendant and fell within the definition of "income" for child support purposes under an earlier version of subpart iii, *supra*, which used the phrase, "due to the payer under a support order as a debt . . . ." Although the present case involves a later version of the statutory definition of "income," we find the rephrasing inconsequential in this context. If anything, the Legislature's change of the phrase "payer under a support order" to "individual" is a more expansive definition with regard to whom the Legislature intended that the money must be due as a "debt."

Whether the monetary allowance defendant allegedly receives under her prenuptial agreement is a "debt" owed and thus "income" under the MCSF Manual definition must be determined from the particular provisions of the prenuptial agreement. Likewise, whether the claimed monthly income renders the support formula unjust or inappropriate requires consideration of the terms under which the income is received. We therefore conclude that the antenuptial agreement is relevant to the subject matter at issue and falls within Michigan's broad rules for discovery.

Nonetheless, we recognize that the circumstances of this case warrant adequate safeguards to protect defendant's present husband's legitimate expectation of privacy in his financial affairs. *Pott, supra* at 377;

*Fassihi v St Mary Hosp of Livonia,* 121 Mich App 11, 16; 328 NW2d 132 (1982). By their nature, antenuptial agreements give rise to a special duty of financial disclosure not required in ordinary contract relationships in order that the parties are fully informed before entering such agreements. *Rinvelt v Rinvelt,* 190 Mich App 372, 378-379; 475 NW2d 478 (1991). We further recognize that the public policy underlying judicial recognition of antenuptial agreements, to foster and strengthen marriage, would be undermined should the confidentiality of the agreements' terms be subject to unrestricted invasion by former spouses. See *id.* at 380-381.

We therefore remand this case to the trial court to conduct an in camera review of defendant's prenuptial agreement before discovery of the relevant terms addressing defendant's claimed receipt of the $50,000 monthly allowance. The trial court shall redact all information from the antenuptial agreement except for terms bearing on monthly payments received by defendant from her husband. This procedure both protects the married couple's privacy and furnishes plaintiff with the necessary information to pursue any potential claim with respect to child support.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.