# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL SULLIVAN,

Plaintiff-Appellee,

v

DENISE SULLIVAN,

Defendant-Appellant.

UNPUBLISHED
May 17, 2018

Nos. 330543 & 334273
Livingston Circuit Court
LC No. 14-006162-DO

Before: METER, P.J., and GADOLA and TUKEL, JJ.

PER CURIAM.

Defendant appeals as if on leave granted (1) an October 22, 2015, order denying her motion for relief from judgment and granting plaintiff's motion to modify spousal support and (2) a March 28, 2016, order again modifying spousal support. This Court initially denied leave to appeal for lack of merit in the grounds presented, *Sullivan v Sullivan,* unpublished order of the Court of Appeals, issued May 19, 2016 (Docket No. 330543); *Sullivan v Sullivan*, unpublished order of the Court of Appeals, issued December 2, 2016 (Docket No. 334273), but the Supreme Court remanded for consideration as on leave granted, *Sullivan v Sullivan*, 500 Mich 957; 892 NW2d 367 (2017); *Sullivan v Sullivan*, 500 Mich App 958; 891 NW2d 477 (2017). We reverse in part and remand for further proceedings before a different judge.

Plaintiff and defendant divorced after a 36-year marriage. The divorce trial took place on October 1, 2014, and the court made a dispositional ruling from the bench on October 30, 2014. In the original dispositional ruling, the court erroneously failed to make an award regarding the vested shares of stock in plaintiff's (now former) employer, Ramco-Gershenson, Inc. On January 12, 2015, the date scheduled for entry of judgment, the parties negotiated the issue of vested shares off the record and entered into a consent judgment on that same date. The consent judgment provided, among other things, that plaintiff would provide a modifiable amount of $12,000 a month in spousal support; this was in accordance with the court's rulings after the divorce trial. The judgment also dealt with the disposition of the vested shares of stock.

On August 27, 2015, defendant filed a motion to enforce certain aspects of the judgment and a motion for partial relief from judgment based on fraud. Defendant asserted that, at the time of the January 12, 2015, negotiations, plaintiff had failed to disclose that he had resigned from his job in December 2014, that a separation agreement had changed the amount of vested Ramco stock that he owned because certain unvested shares had vested, and that he had received

-1-

a substantial lump-sum payment. Defendant asserted that plaintiff's 2014 total income was substantially higher than he had represented, the value of the concealed stock was $471,144.46, and he no longer had the employer-provided life insurance required by the divorce judgment.

Over the course of the following months, the trial court held various hearings, denied defendant's claim of fraud, ordered that plaintiff comply with certain aspects of the consent judgment, reduced (on October 22, 2015) the spousal support to $2,000 a month, and then raised (on March 26, 2016) the spousal support to $4,000 a month.

Defendant first argues that the trial court erred in denying the motion for partial relief from judgment because, before the signing of the consent judgment, plaintiff made a material misrepresentation that inured to defendant's detriment. This court reviews for an abuse of discretion a trial court's decision regarding a motion for relief from judgment. *Yee v Shiawassee Bd of Comm'rs*, 251 Mich App 379, 404; 651 NW2d 756 (2002).

MCR 2.612(C)(1)(c) allows for relief from judgment on grounds of "[f]raud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." A showing of "fraud or misrepresentation" warranting relief from judgment requires the moving party to provide significant, specific allegations and strict factual proof. *Yee*, 251 Mich App at 405.

The parties agree that at the January 12, 2015, hearing, the issue of the vested shares of Ramco stock was central. Plaintiff's attorney represented that plaintiff had 33,679 vested shares.[1] Plaintiff contends that the trial court's finding that plaintiff had not lied to the court must be afforded deference and was supported by the evidence because plaintiff later testified that he believed the court was asking about the circumstances existing in October 2014 and also testified that he did not know that certain vesting had, as of January 12, already occurred. But plaintiff's testimony that he did not know that vesting had already occurred and thought it would occur in late January is belied by his testimony that he knew about the components of his severance package with Ramco. The severance agreement spoke to the vesting of the so-called "non-performance" stock shares[2] on the date of plaintiff's December 19, 2014, resignation, provided that plaintiff did not revoke (within seven days) the release and discharge provisions.[3] With regard to the so-called "performance" stock shares, the severance agreement indicated that plaintiff would be entitled to a payout for the shares, "for which vesting will be accelerated and will vest in full [sic] and plaintiff will be paid for such performance share units, based on the

---

[1] Plaintiff does not argue that this statement by the attorney should not be attributed to plaintiff, arguing instead that "[plaintiff] honestly believed that he was being asked about the vested stock shares he held at the time of [the October divorce] trial."

[2] The previously-unvested shares were divided into "performance" and "non-performance" shares. In accordance with his separation agreement with Ramco, plaintiff received a payout for the vesting of 9,300 unvested performance shares; received vested shares for 15,226 of the non-performance, unvested shares; and lost 5,232 of the unvested shares.

[3] It is not disputed that plaintiff did not exercise his seven-day right to revoke.

market price of the Trust's shares on the Resignation Date, within 30 calendar days after the Release provisions . . . become effective." Plaintiff received the payment for the performance shares on January 9, 2015.[4]

The Michigan Supreme Court has stated:

[t]he general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery. [*Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012) (quotation marks and citations omitted).]

In addition, the *Titan* Court noted that even misrepresentations made innocently can be actionable if the effect on the plaintiff is equally egregious. *Id*. at 556. See also *M&D, Inc v WB McConkey*, 231 Mich App 22, 27-28; 585 NW2d 33 (1998) (discussing innocent misrepresentation in the context of a contract).[5] Although defendant admittedly focused in her motion on deliberate and intentional fraud, her motion also referred to relief from judgment based on a "material misrepresentation."

Even accepting the court's finding that plaintiff thought that the relevant period for determining the amount of vested shares was October 30, 2014, the central issue at the January 12, 2015, hearing was the *distribution of vested shares*. Keeping this in mind, regardless of whether plaintiff intended to lie or did not intend to lie, he did in fact make a material representation at this time, and this representation was false. Plaintiff's attorney said "[h]e has 33,679 . . . shares . . . that vested." Plaintiff admitted to knowledge of the separation agreement, and this agreement, viewed in context, indicated that plaintiff's non-performance shares would vest before January 12 (i.e., on the resignation date) and that the performance shares would vest at some point in the near future (in actuality, payment for these ended up being made on January 9). Under these circumstances, the assertion about having only 33,679 vested shares was made recklessly. In addition, given that the issue being negotiated at the January 12 hearing was distribution of the vested shares, plaintiff clearly made the assertion with the intention that defendant act upon it, and evidence shows that defendant did act upon it to her detriment.

Under these circumstances, it was an abuse of discretion for the trial court to deny the motion for relief from judgment. Defendant must be allowed to reopen the issue of distribution

---

[4] Plaintiff testified that when he signed the Ramco separation agreement, he knew that he would be getting this payment at some point.

[5] This Court has held that "[j]udgments entered pursuant to the agreement of parties are of the nature of a contract." *Gramer v Gramer*, 207 Mich App 123, 125; 523 NW2d 861 (1994).

of the vested stock, given that it represents a significant asset. In addition, because spousal-support factors include a consideration of the "property awarded to the parties," see *Luckow v Luckow*, 291 Mich App 417, 424; 805 NW2d 453 (2011),[6] the issue of spousal support must also be revisited.

In its October 22, 2015, order, the court held the issue of life insurance in abeyance, stating that it would revisit in March 2016 whether plaintiff needed to obtain life insurance for defendant. It does not appear that this issue was ever addressed with finality. The court referred to life insurance at a hearing on October 5, 2015, stating "you better get some life insurance,"[7] but it is not clear to whom the court was speaking, and, at any rate, the court *later* stated that it was holding the issue in abeyance. The life-insurance issue remains outstanding and must also be addressed on remand.

Defendant next argues that the October 22, 2015, order violated her constitutional rights to due process because she received inadequate notice of the hearing on that date and was erroneously denied discovery. She also argues that the court erred in modifying the spousal-support award at that time. This Court reviews constitutional (e.g., due process) issues de novo. *Kampf v Kampf*, 237 Mich App 377, 381-382; 603 NW2d 295 (1999). This Court reviews for an abuse of discretion a trial court's decision to grant or deny discovery. *Shinkle v Shinkle*, 255 Mich App 221, 224; 663 NW2d 481 (2003).

We review "the trial court's factual findings relating to the award or modification of [spousal support] for clear error." *Moore v Moore*, 242 Mich App 652, 654; 619 NW2d 723 (2000). "A finding is clearly erroneous if the appellate court is left with a definite and firm conviction that a mistake has been made." *Id*. at 654-655. "If the trial court's findings are not clearly erroneous, this Court must then decide whether the dispositional ruling was fair and equitable in light of the facts." *Id*. at 655.

The lower-court record contains a notice of hearing, dated October 14, 2015, stating that plaintiff's motion to modify spousal support would be heard on October 21, 2015. The record

---

[6] In *Luckow*, 291 Mich App at 424, the court stated that several factors are pertinent to spousal support, including:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, and (11) general principles of equity. [Quotation marks and citation omitted.]

[7] The register of actions, in an entry dated October 5, 2015, states "DEFT'S MOT TO ENFORCE JUDGMENT; GRANTED AS TO LIFE INSURANCE ON PLTF," but the parties point to no order, aside from the ambiguous oral statement on October 5, 2015.

contains another document, entitled "Praecipe, request for hearing" and dated October 14, 2015; this document states: "Please place on the motion calendar for Monday, November 2, 2015." But this latter document also states: "Scheduled to be Heard on Wednesday, October 21, 2015," "By Permission of Judge's Clerk, Lisa."[8] In addition, the register of actions states, in an October 13, 2015, entry, that the motion to modify spousal support would be "set for same date as evid hear 10/21[.]"

Toward the end of the October 21, 2015, hearing, the court stated that it thought the spousal-support motion was scheduled to be heard that day,[9] but defendant's attorney stated that it was not scheduled to be heard until November and that defendant had a right to discovery. The trial court stated that there was no right to discovery with regard to the motion and scheduled the hearing for the following day. On appeal, defendant contends that her rights to due process were violated because of the two dates listed on the praecipe. This argument is not tenable, however. The document labeled "Praecipe" *requests* a motion date of November 2, but then states that the motion is "Scheduled to be Heard on Wednesday, October 21, 2015," "By Permission of Judge's Clerk[.]" In addition, the notice of hearing served on defense counsel on the same date as the praecipe states that the motion would be heard on October 21, 2015. It is a stretch to argue that defense counsel had no notice, under these circumstances, that the motion would be heard on October 21, and even assuming, arguendo, that there was some ambiguity regarding the date of the hearing, at the very least defense counsel was put on notice that he needed to clarify which date was applicable.

Defendant also argues that she did not realize the hearing on spousal support would be an evidentiary hearing related to the determination of the amount of support to be paid. However, plaintiff's motion to modify spousal support clearly requested that the court do the following: "Following a hearing, determine the appropriate amount of support that should be paid due to the fact that [p]laintiff has lost his job." The notice of hearing states: "Plaintiff's Motion to Modify Spousal Support will be brought on for hearing on Wednesday, October 21, 2015." Under these circumstances, defendant should have been aware that the October 21, 2015, hearing would involve a redetermination of spousal support based on the limited issue of job loss. Defendant takes issue with the lack of discovery, and on appeal cites MCR 2.302(A)(4), which states: "After a postjudgment motion is filed pursuant to a domestic relations action as defined by subchapter 3.200 of these rules, parties may obtain discovery by any means provided in subchapter 2.300 of these rules." But the hearing was scheduled for October 21 and defense counsel did not make his oral, on-the-record "motion" for discovery until that date, in the midst of the fraud hearing. Under these circumstances, it is difficult for us to find that the trial court erred with regard to discovery, and, at any rate, we are now remanding this case for a reevaluation of spousal support.

---

[8] An October 14, 2015, proof of service indicates that both the "Praecipe" and the "Notice of Hearing" were served on defendant's attorney on October 14, 2015.

[9] The court had, earlier that day, expressed that it did not know when the motion was scheduled to be heard, but plaintiff's counsel said, "we had it set for today."

As stated in *Moore*, 242 Mich App at 654:

> The main objective of alimony is to balance the incomes and needs of the parties in a way that will not impoverish either party. Alimony is to be based on what is just and reasonable under the circumstances of the case. An alimony award can be modified upon a showing of changed circumstances. The modification of an alimony award must be based on new facts or changed circumstances arising since the judgment of divorce.

Defendant contends that because plaintiff quit his job *before* entry of the consent judgment on January 12, 2015, there was no change of circumstances warranting a modification of spousal support. This argument elevates form over substance. The $12,000 a month in spousal support was based on the trial court's rulings after the divorce trial (and before the termination of employment), and the parties merely formalized this amount in the consent judgment. The trial court did not clearly err in finding a change of circumstances. Defendant also contends that the trial court's ruling was improper because the court stated that the change in circumstances happened "through no fault of [plaintiff's] own." But plaintiff did provide plausible reasons for why he terminated his employment with Ramco, stating that "it was made quite clear that neither [he nor his boss] had confidence in each other's decision[-]making ability, and the best thing would be for me to go." Accordingly, we cannot conclude that the trial court clearly erred in ruling that plaintiff's decision to quit was not made on a whim.

Defendant states: "Discussing . . . the findings on the spousal support factors is virtually meaningless in light of the fact that [defendant] did not have an opportunity to present her case." Nevertheless, she argues that the trial court failed to address many of the required spousal-support factors and erroneously imputed income to defendant while not imputing income to plaintiff. It is not entirely clear, however, that the court was imputing income to defendant. The court stated that there was no reason defendant could not work, but made no reference to imputing a certain income to defendant. In addition, it is not entirely clear that the court did *not* impute income to plaintiff, seeing as the court ordered him to pay spousal support despite his unemployment. At any rate, the issue of spousal support must be revisited on remand, as we have already noted.

Defendant next argues that the trial court erred in failing to grant her certain attorney fees. The trial court did not address this issue. In general, an issue must be raised and addressed to be preserved. *Polkton v Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005). "[T]his Court may disregard the issue preservation requirements and review may be granted if failure to consider the issue would result in manifest injustice." *Id*. at 95-96. We address this issue because, while defense counsel did not discuss the attorney-fee issue during his closing argument on October 21, 2015, the fact remains that defendant did request attorney fees in her written motion that was being heard on that date.[10]

---

[10] In general, this Court reviews for an abuse of discretion a court's grant or denial of attorney fees. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). Here, though, as noted, the

Defendant, in her August 27, 2015, motion to enforce judgment, argued that plaintiff had failed to take certain steps to enforce the judgment, such as transferring certain monies from his IRA. She requested attorney fees under MCR 3.206(C)(2)(b) "for the reason that [p]laintiff refused to comply with the Consent Judgment despite having the ability to comply and that his fraudulent misrepresentations caused [d]efendant to incur substantial attorney fees in connection with all necessary attorney fees incurred [sic] to bring this matter to the attention of this [c]ourt." Defendant claims that the court ordered plaintiff to comply with various "equalization of accounts" orders and that the court should have awarded attorney fees in conjunction with that. Although the pertinent transcript reveals that plaintiff represented that everything that needed to be done was in the process of being accomplished and the court did not explicitly "order" anything orally, the court did order certain equalization actions in its written order dated October 22, 2015.

MCR 3.206(C)(1) states: "A party [in a domestic-relations action] may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding." MCR 3.206(C)(2)(b) states that "[a] party who requests attorney fees and expenses must allege facts sufficient to show that . . . the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply." Contrary to defendant's suggestion, these rules do not contain a *requirement* that attorney fees be awarded upon request even if expenses were incurred because of an unjustified refusal to comply with a court order. See, e.g., *Butler v Simmons-Butler*, 308 Mich App 195; 863 NW2d 677 (2014) (stating that MCR 3.206(C)(2)(b) *allows* attorney fees if a party refused to comply with a court order). At any rate, the court, as noted, simply did not address the request for attorney fees. This Court has held that the "failure to exercise . . . discretion" can amount to an abuse of discretion. See *Komejan v Suburban Softball, Inc*, 179 Mich App 41, 49; 445 NW2d 186 (1989). Because it is appropriate to remand this case for further proceedings as previously discussed, we also remand the issue of attorney fees.

Defendant next argues that the case should be assigned to a different judge on remand. Defendant did not move to disqualify the trial judge below. Accordingly, this issue is not preserved. See, e.g., *Welch v District Court*, 215 Mich App 253; 545 NW2d 15 (1995). However, the Michigan Supreme Court has remanded proceedings to a different judge of its own volition, without even discussing any motions below or arguments on appeal. See *People v Smith*, 496 Mich 133, 144; 852 NW2d 127 (2014) (remanding a criminal case to a different judge because the initial judge demonstrated hostility towards the prosecution). In the divorce case of *Sparks v Sparks*, 440 Mich 141, 163; 485 NW2d 893 (1992), the Court remanded the matter to a different judge, based on an appearance of impropriety, without discussing any motions made below. Accordingly, the absence of a motion to disqualify does not mean that defendant's

court simply did not address defendant's attorney-fee request, so there has been no exercise of discretion to review.

argument should be rejected automatically. As defendant points out, MCR 7.216(A)(7) allows the Court of Appeals to "grant . . . relief as the case may require[.]"[11]

MCR 2.003(C)(a) allows for judicial disqualification based on bias or prejudice. MCR 2.003(C)(b) allows for disqualification because of a failure "to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct." Canon 2(A) states, in part, that a judge "must expect to be the subject of constant public scrutiny" and "must therefore accept restrictions on conduct that might be viewed as burdensome by the ordinary citizen[.]" Canon 2(B) states that that a judge "should promote public confidence in the integrity and impartiality of the judiciary" and "should treat every person fairly, with courtesy and respect."

The record is replete with instances in which the judge treated defendant or her attorney, Bruce Sage, with apparent hostility. We will list some (but not all) of the instances. At one point, Sage thought that the judge was finished speaking and attempted to respond, stating, "I thought you were finished," and the judge said, "Oh, for heavens [sic] sake. If I take a breath that doesn't mean I stopped." The judge was discussing payment amounts to equalize accounts, and after stating "It's not rocket science" to Sage and "No frickin' way" in response to the court clerk, she stated to Sage, "every time you start saying you didn't know [in response to questions about what defendant had in her accounts] I'm gonna sanction you a $100 [sic]." When Sage presented an email purportedly from plaintiff and attempted to admit it, the judge discussed the requirement of laying a foundation and said, "I mean really." When Sage asked if the judge was ordering defendant, who lives in Florida, to appear in person for an evidentiary hearing, the judge said, "You bet I am." When the judge issued a decision at the conclusion of the October 22, 2015, hearing without first allowing or even mentioning closing arguments, Sage attempted to request a closing argument but the judge reprimanded him, stating, "Are you makin' a joke?" and suggesting that it was imperious of Sage to mention closing arguments *after* the judge's decision. Sage attempted to explain that he did not interject earlier because he "didn't want to interrupt you, Your Honor," but the judge said, "No, Mr. Sage, I'm not [allowing closing arguments]. We're done. Get the other people in here."

When defendant was attempting to explain her financial situation, the judge said, "Yeah, so do some explaining about why you only have 120 in the bank." When defendant explained that her cost for cable and her landline telephone was $250 a month and her cellular-telephone cost was $235 a month, the judge said, "that's ridiculous." Defendant explained that she had pets to care for, including a blind and elderly dog, and the judge stated, in regard to defendant's pets: "maybe you need to get rid of them" (in order to save money). The judge stated that defendant should have saved more money in 2015, but did not place this in the context of

---

[11] In general, a motion to disqualify is reviewed for an abuse of discretion. See *Cain v Michigan Dep't of Corrections*, 451 Mich 470, 503; 548 NW2d 210 (1996). But here, as discussed, defendant argues for assignment to a new judge without having argued as much below, emphasizing general principles of fairness and allegations of animosity and the appearance of impropriety. Because the issue was not raised in the lower court, there was not an exercise of discretion for this Court to review.

defendant's having been unaware for a large part of that year that plaintiff had lost his job and would not be paying spousal support of $12,000 a month into the future.

It is true that some of these remarks, viewed in isolation, are of relatively little impact or import, but it is important to view them as a pattern. Sage did not demonstrate hostility or aggressiveness throughout the proceedings but the judge displayed a pattern towards him and defendant of at least apparent hostility. It seems especially egregious for the judge to have recommended that defendant "get rid of" her pets. While there might be certain situations in which rehoming pets might indeed be a necessity (for example, if someone is destitute and living in a homeless shelter), defendant was not in that type of situation. The appearance of justice would be better served if the case is remanded to a different judge. See *Sparks*, 440 Mich at 163; see also MCR 2.003(C)(b) and Code of Judicial Conduct, Canon 2(A) and (B).

Defendant lastly takes issue with the March 2016 spousal-support hearing, stating that plaintiff did not comply with a document subpoena and effectively deprived defendant of her constitutional rights to due process and that the court erred in its spousal-support findings.

With regard to the subpoena, plaintiff unambiguously testified at the March hearing that he had no other documents to produce regarding his 2015 income. He testified that he had yet to file his tax return for 2015 but would provide defendant's counsel with a copy of the return when it was filed. As such, defendant's argument about the subpoena is without merit.

Contrary to defendant's implication, the court made no specific findings regarding imputation or non-imputation of income at the March hearing but did order plaintiff to pay defendant $4,000 a month despite his current lack of employment. The court referred to the fact that both defendant and plaintiff were earning money from stock dividends and noted that the initial support order had been set based on a high income. On appeal, defendant argues that the court was required to revisit all the spousal-support factors, but it appears that the court was properly looking at what it viewed to be the *changed* circumstances, i.e., plaintiff's loss of employment. At any rate, because the distribution of stock must be revisited, a revisiting of spousal support is also warranted, as we have already discussed.

Reversed in part and remanded for further proceedings before a different judge. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Michael F. Gadola
/s/ Jonathan Tukel