*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SARAH KOERBER,

        Plaintiff-Appellee,

v

KEITH KOERBER II,

        Defendant-Appellant.

UNPUBLISHED
March 25, 2025
2:01 PM

No. 365269
Oakland Circuit Court
LC No. 2019-872253-DM

Before: MALDONADO, P.J., and LETICA and WALLACE, JJ.

PER CURIAM.

Defendant appeals as of right from the judgment of divorce entered by the trial court. Defendant challenges the division of the marital estate and modification of a status quo order on appeal. We affirm.

## I. BACKGROUND

This case arises from the parties' divorce judgment, which was entered after a 16-day bench trial. The parties were married on July 19, 2014, and their judgment of divorce was entered March 8, 2023. The parties are parents to two children, KRK and KJK.[1]

The parties shared a volatile and rocky relationship. Defendant was charged with domestic violence in 2018 and aggravated stalking in August 2019. The domestic violence followed an interaction with plaintiff while the aggravated stalking charge stemmed from defendant's alleged actions in planting cocaine and a firearm in plaintiff's car in June 2019.

During their marriage, the parties lived across the street from defendant's parents in Troy, Michigan, and the equity in the parties' marital home became a point of contention during their divorce proceedings. Plaintiff, who had a master's degree from Oakland University in human

---

[1] While custody and parenting time of the two children were disputed issues at trial, defendant has not presented any claims of error regarding those matters.

resources, became a stay-at-home mother once their first child was born, and continued to stay at home while defendant ran a highly successful construction company.

Testimony and phone calls recorded while defendant was in the Oakland County Jail presented during trial showed that defendant desired to wipe out all equity in the marital home and leave plaintiff essentially penniless following entry of the parties' divorce judgment. The evidence also demonstrated that defendant's parents participated in this endeavor, and also acted to undermine and sabotage plaintiff emotionally and financially as she raised the couple's two young children.

Plaintiff filed for divorce in April 2019. At trial, plaintiff testified that she had to return to work in June 2019, at approximately the same time that the trial court entered a stipulated status quo order that required defendant to pay the family's bills during the divorce proceedings. The evidence at trial revealed that plaintiff earned in the range of $80,000 when she returned to work. During the divorce proceedings, as well as during defendant's earlier incarceration in 2018 on a charge of domestic violence, defendant's parents paid the mortgage payment on the marital home, plaintiff's car payment, the home and automobile insurance, and various other bills for the family. Defendant was again incarcerated on a charge of aggravated stalking in August 2019, and remained in jail for the duration of the divorce proceedings. Before his incarceration, defendant earned in the range of $200,000 annually.

Throughout the lower court litigation, defendant filed multiple motions requesting that the trial court modify the status quo order retroactive to his date of incarceration and that he not be held responsible for the family's expenses. Defendant repeatedly claimed that he was unable to pay the status quo expenses, which the evidence placed in the range of $56,000 at the time of trial, because he was not working and had substantial debts owed to his parents, the state of Michigan, the Internal Revenue Service, and other creditors. During the pendency of the bench trial, defendant surprised plaintiff and the trial court by filing for bankruptcy on April 1, 2021, without providing any advance notice.

On October 6, 2021, the United States Bankruptcy Court for the Eastern District of Michigan entered an order allowing the bankruptcy trustee in defendant's bankruptcy proceedings to compromise certain claims. These included plaintiff's claims against him, as well as those of his parents. The order provided that plaintiff was to receive $140,000 of the equity in the marital home once it was ordered to be sold. Defendant owed over $300,000 to his parents and they were awarded $175,000 in settlement of their claim on the marital home as mortgagees.

After 16 days of trial, the trial court in this action declined to modify the June 21, 2019 status quo order retroactively and held that plaintiff's status quo expenses were domestic support obligations under federal law that defendant could not discharge in bankruptcy. Although the trial court did not specifically address the requested modification of the status quo order in its February 2, 2023 opinion and order following the bench trial, it impliedly rejected defendant's request and determined that good cause did not exist to modify the status quo order. The status quo expenses were included as an exhibit to the parties' divorce judgment and the trial court invited the bankruptcy court to exercise jurisdiction to order defendant to pay the status quo expenses. The trial court also rejected defendant's claim that he should be awarded half of the $140,000 in equity from the marital estate, concluding it was inconsistent with the parties' agreement as part

of the settlement in the bankruptcy proceedings. Similarly, the trial court rejected defendant's claim that it should perform a division of the parties' personal property, explaining that the division had already taken place during the bankruptcy proceedings.

Defendant now appeals as of right.

## II. DIVISION OF THE MARITAL ESTATE

On appeal, defendant argues that the trial court erred by holding that all aspects of the division of the marital estate had been addressed in the context of defendant's bankruptcy, and by not conducting an independent apportionment of the marital estate. We disagree.

## A. STANDARDS OF REVIEW

In reviewing the trial court's distribution of the marital estate, its factual findings, if any, are reviewed for clear error. *Berger v Berger*, 277 Mich App 700, 717; 747 NW2d 336 (2008). If, after reviewing the record as a whole, this Court is left with a definite and firm conviction that the trial court made a mistake, then its findings can be said to be clearly erroneous. *Id*. If the trial court's factual findings are upheld, its ultimate dispositional ruling is reviewed to determine if it was fair and equitable in light of the facts. *Id*. Appellate courts will affirm a lower court's discretionary ruling unless left with a firm conviction that the division was inequitable. *Id*. at 717-718. This Court reviews questions of law de novo. *Shinkle v Shinkle (On Rehearing)*, 255 Mich App 221, 224; 663 NW2d 481 (2003). This Court also reviews de novo the application of the doctrine of collateral estoppel. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

## B. LEGAL BACKGROUND

In dividing the marital estate, the trial court's goal is to reach an equitable division of the property. *Seifeddine v Jaber*, 327 Mich App 514, 522; 934 NW2d 64 (2019). Under certain circumstances, the proceeds of a settlement from litigation may be considered a joint marital asset. For example, in *Pickering v Pickering*, 268 Mich App 1, 10; 706 NW2d 835 NW2d (2005), this Court acknowledged that proceeds from a personal injury suit intended to compensate for pain and suffering are not joint marital property, but that the proceeds could nonetheless be distributed under

MCL 552.23[2] and MCL 552.401.[3]  See also *Lee v Lee*, 191 Mich App 73, 78-79; 477 NW2d 429 (1991) (acknowledging that the plaintiff wife's inheritance was her separate property, not a marital asset, and would only be distributed as part of the marital estate if the remaining property was "insufficient for the suitable support and maintenance of [the] defendant, . . . or if [the] defendant had contributed to its acquisition, improvement, or accumulation.").  In *Lee*, *id*. at 79, the plaintiff was involved in a car accident, the sole claimant for benefits, and the proceeds from the case represented payment for her pain and suffering, as opposed to lost wages.  Under such circumstances, this Court held the proceeds were not considered joint marital property, but could still be distributed under MCL 552.23 and MCL 552.401.  *Id*.

While the division of the marital estate is not required to have "mathematical equality," the trial court must provide an explanation for any "significant departure" from an equal division of the marital estate.  *Seifeddine*, 327 Mich App at 522.  The trial court may consider the following factors in dividing the marital estate:

> (1) the duration of the marriage, (2) the contributions of the parties to the marital estate, (3) the age of the parties, (4) the health of the parties, (5) the life situation of the parties, (6) the necessities and circumstances of the parties, (7) the parties' earning abilities, (8) the parties' past relations and conduct, and (9) general principles of equity.  [*Id*., quoting *Berger*, 277 Mich App at 717.]

---

[2] MCL 552.23 provides, in pertinent part:

> (1) Upon entry of a judgment of divorce or separate maintenance, if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party and any children of the marriage who are committed to the care and custody of either party, the court may also award to either party the part of the real and personal estate of either party and spousal support out of the real and personal estate, to be paid to either party in gross or otherwise as the court considers just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case.

[3] MCL 552.401 provides:

> The circuit court of this state may include in any decree of divorce or of separate maintenance entered in the circuit court appropriate provisions awarding to a party all or a portion of the property, either real or personal, owned by his or her spouse, as appears to the court to be equitable under all the circumstances of the case, if it appears from the evidence in the case that the party contributed to the acquisition, improvement, or accumulation of the property.  The decree, upon becoming final, shall have the same force and effect as a quitclaim deed of the real estate, if any, or a bill of sale of the personal property, if any, given by the party's spouse to the party.

-4-

## C.  EQUITY FROM THE SALE OF THE MARITAL HOME

One portion of the marital estate that defendant claims was not equitably divided was the equity from the parties' marital home.  The bankruptcy court's order authorizing the trustee to compromise claims provided that the proceeds of the sale of the marital home were to be held by the bankruptcy trustee in escrow and were not to be disbursed until certain conditions were satisfied.  Those conditions included the entry of stipulated orders in two related pending cases in Oakland Circuit Court.  As relevant to this issue, the bankruptcy trustee was then ordered to pay $140,000 "to [plaintiff] in full satisfaction of her Alleged Ownership Interest in the [marital home] and any other claims she may have arising from or relating to [the marital home]."  The order further provided that these payments to plaintiff "will be free and clear of all liens, claims, encumbrances and other interests."  The order also provided that defendant's parents were to receive a payment of $175,000 in settlement of their mortgage claim.  The order further provided that the Oakland Circuit Court had authority to determine the division of any remaining marital property, child support, visitation, attorney fees and costs, stating in pertinent part:

14. Notwithstanding the property compromised in this order, including without limitation, the Personal Property, Real Property, the Alleged Ownership Interest, and the Mortgage Claim, *the Oakland Circuit Court, Case No. 2019-872253-DM ("Divorce Case") will be permitted to determine the division of the remaining marital property* . . . .  [Emphasis added.]

Plaintiff asserts that defendant was collaterally estopped from raising in the trial court the argument that the $140,000 in equity should have been equally divided between himself and plaintiff.  We agree.

As this Court acknowledged in *King v Munro*, 329 Mich App 594, 599; 944 NW2d 198 (2019), if the prior proceedings culminated in a valid final judgment and the issue was actually determined in the prior proceeding, the doctrine of collateral estoppel will preclude relitigation of the issue.  This Court also set forth the requirements of collateral estoppel:

Generally, application of collateral estoppel requires (1) that a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) that the same parties had a full and fair opportunity to litigate the issue, and (3) mutuality of estoppel.  [*Id.*, quoting *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 529; 866 NW2d 817 (2014).]

Turning to the first element, that a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, this Court has acknowledged, in the context of the doctrine of res judicata, that each discrete matter that arises in a bankruptcy proceeding between the filing of the actual petition and the issuance of the closing order certifying that the bankruptcy estate has been fully administered is treated as a separate proceeding, "and a final order can be any order that concludes a discrete judicial unit in the larger case." *RDM Holdings, LTD v Continental Plastics Co*, 281 Mich App 678, 694; 762 NW2d 529 (2008).  The bankruptcy court's stipulated order allowing the compromise of the claims by the trustee concluded a discrete judicial unit in the overall bankruptcy filing by defendant and the division of the equity from the marital

home was a question of fact essential to the final judgment. Therefore, we are satisfied that the first element of the doctrine of collateral estoppel has been met.

Turning to the second element, the same parties had a full and fair opportunity to litigate the issue of the division of the $140,000 in equity from the marital home in the bankruptcy proceedings, *King*, 329 Mich App at 599, and the issue was one that was actually and necessarily decided in the bankruptcy court. *Leahy v Orion Twp*, 269 Mich App 527, 530; 711 NW2d 438 (2006). Specifically, the parties stipulated to the entry of the order authorizing the bankruptcy trustee to compromise claims, and therefore, the issue of plaintiff's receipt of the equity in the marital home was actually determined.

Addressing the final element, estoppel is mutual if the party taking advantage of the earlier adjudication would have been bound by that adjudication if it had gone against that party. *Dep't of Environmental Quality v Sancrant*, 337 Mich App 696, 708; 976 NW2d 874 (2021). In the present case, there is mutuality of estoppel because plaintiff, the party seeking to take advantage of the stipulated order authorizing the bankruptcy trustee to compromise claims, would have also been bound had the adjudication been adverse to her. Thus, the requirements of collateral estoppel were satisfied and the doctrine applied to preclude defendant's claim challenging the division of the equity from the marital home in the trial court.

### D. DIVISION OF THE PARTIES' PERSONAL PROPERTY

The order authorizing the trustee to compromise claims also provided that once the closing of the marital home was held, defendant's parents were to receive "the Personal Property," which included "all tools and miscellaneous items located in or on top of the [work] vans of defendant, free and clear of any lien, claim or interest of the Bankruptcy Estate, Debtor, Trustee, or [plaintiff]." Defendant was to be held responsible for any costs incurred in moving or storing his personal property, with the order providing, in pertinent part:

> The Parents or Debtor will be responsible for the costs associated with moving and/or storing their Personal Property and in no event will the Bankruptcy Estate be liable for such costs.

The order further provided that once the marital home was sold, plaintiff was to leave the marital home in "broom-clean" condition. Additionally, specific personal property was to be left in the marital home, including a pool table that belonged to defendant's parents, a master bedroom set, miscellaneous boxes under the basement stairs, two chairs and a glass table on the front porch of the home, defendant's hockey bag, his work files and tax materials, and miscellaneous personal items, with the list being subject to "further stipulation by the Trustee and [plaintiff]." Any personal property that specifically was allocated to defendant's parents was set forth in the order, and was excluded from the bankruptcy estate. For example, Paragraph 9 of the order provided that "[t]he Parents' Personal Property is not property of the Bankruptcy Estate and is not included in the sale of the Real Property." The order also provided that when defendant's parents removed their personal property before the sale of the marital home, they were permitted, but not required, to retrieve personal papers and other personal affects belonging to defendant.

-6-

When asked about the categories of marital property in the marital home during trial, plaintiff testified that there were boxes and possessions of her father's in the garage, as well as the children's bikes. Nothing was left in the kitchen aside from a toaster oven, an oven, a dishwasher, a microwave, some pots and pans, and plates. Nothing was left in the other rooms of the marital home, including the bedrooms. A pool table that was a gift to the couple from defendant's parents was still in the basement of the marital home.

On appeal, defendant claims that the case should be remanded to the trial court to allow it to determine if the parties' household goods are marital or separate property, to conduct a valuation on the property and allocate the property if it is marital property, and articulate its reasoning for its award of the majority of the marital estate to plaintiff, which defendant asserts was inequitable. Although defendant asserts that there were "significant items of marital personal property located in the home" that neither the bankruptcy court nor the trial court addressed, he does not specify what those items are. By not properly briefing this issue, defendant has abandoned it on appeal. *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 517; 892 NW2d 467 (2016) (quotation marks and citation omitted).

Even setting aside defendant's deficient briefing, the order of the bankruptcy court addressed the division of the parties' personal property in the settlement of the bankruptcy proceedings and, from the record below, it did not appear that there was any additional personal property to divide. For example, the bankruptcy court's order to compromise claims stated that once the marital home was sold, defendant's parents "will also receive the Personal Property, including all tools and miscellaneous items located in or on top of the vans, free and clear of any lien, claim or interest of the Bankruptcy Estate, Debtor, Trustee, or [Plaintiff]." The order further provided that defendant and his parents were to incur the costs of moving or storing the personal property. When plaintiff and the children moved out of the marital home before it was sold, they were ordered to leave all fixtures, bathroom mirrors, window treatments, light fixtures, built-in kitchen appliances and equipment, the electric cooktop, dishwasher, garbage disposal, microwave, built-in electric oven, and all landscaping. Accordingly, while the bankruptcy court's order provides that any remaining marital property may be divided by the trial court, it did not appear that there was any property left to divide, and, as we have noted, defendant has not specifically identified any remaining marital property in his brief on appeal to shed light on this matter. Accordingly, we cannot conclude that the trial court erred when it did not undertake a division of the parties' marital property and deferred to the bankruptcy court after the settlement proceedings in that court.

## III. MODIFICATION OF STATUS QUO ORDER

Defendant next argues that the trial court erred in declining to retroactively modify the June 21, 2019 status quo order. We disagree.

## A. STANDARD OF REVIEW

In *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010), this Court explained the standards of review applicable to a divorce action:

> In deciding a divorce action, the circuit court must make findings of fact and dispositional rulings. *McDougal v McDougal*, 451 Mich 80, 87; 545 NW2d 357 (1996) (citations omitted). This Court must first review the trial court's findings of fact. *Sparks v Sparks*, 440 Mich 141, 151; 485 NW2d 893 (1992). Findings of fact, such as a trial court's valuation of particular marital assets, will not be reversed unless clearly erroneous. *Beason v Beason*, 435 Mich 791, 805; 460 NW2d 207 (1990). A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake was made. *Id*.; *Johnson v Johnson*, 276 Mich App 1, 10-11; 739 NW2d 877 (2007). Special deference is given to the trial court's findings when they are based on the credibility of the witnesses. *Draggoo v Draggoo*, 223 Mich App 415, 429; 566 NW2d 642 (1997). [Quotation marks omitted.]

If this Court upholds the trial court's factual findings, this Court must determine whether the trial court's dispositional ruling was fair and equitable in light of those facts. *Berger*, 277 Mich App at 717.

To the extent that the June 21, 2019 status quo order can be viewed as an order regarding child support, this Court reviews child support orders to determine whether, in entering the order, the trial court abused its discretion. *Teran v Rittley*, 313 Mich App 197, 212; 882 NW2d 181 (2015). When the trial court's decision falls outside the range of reasonable and principled outcomes, it abuses its discretion. *Id*. at 213.

## B. LEGAL BACKGROUND

The status quo order at issue was a temporary order entered under MCR 3.207, which reads:

> **(A) Scope of Relief**. The court may issue ex parte and temporary orders with regard to any matter within its jurisdiction . . . .
>
> * * *
>
> **(C) Temporary Orders**.
>
> * * *
>
> (3) *A temporary order may be modified at any time during the pendency of the case, following a hearing and upon a showing of good cause*. [Emphasis added.]

While the court rule does not define the phrase "good cause," this Court has defined good cause in the context of other provisions of the court rules. For example, in *In re Utrera*, 281 Mich App 1, 10; 761 NW2d 253 (2008), this Court acknowledged, in the context of construing MCR 3.923(G), that because "good cause" was not defined by the court rule, it could turn to a dictionary for an appropriate definition. This Court noted that *Black's Law Dictionary* (8th ed) defined "good cause" as "a legally sufficient reason." *In re Utrera*, 281 Mich App at 10 (alteration omitted). This Court also recognized that "good cause" had been defined as " 'a substantial reason amounting in law to a legal excuse for failing to perform an act required by law.' " *In re Utrera*,

281 Mich App at 10-11, quoting *In re FG*, 264 Mich App 413, 419; 691 NW2d 465 (2004) (internal quotation marks and citation omitted). The *In re Utrera* panel adopted the same definitions of "good cause."

In our view, "good cause" simply did not exist to modify the June 21, 2019 stipulated status quo order under MCR 3.207(C)(3) and the trial court did not err in declining to modify this order. We acknowledge that within two months of the temporary order's entry, defendant was incarcerated in the Oakland County Jail for charges of aggravated stalking of plaintiff. Defendant remained incarcerated during the pendency of the lower court proceedings, during which, as the trial court aptly observed in its factual findings, defendant and his parents concocted a deliberate scheme to swindle plaintiff out of her share of the marital home's equity while she cared for the couple's young children. We further acknowledge defendant was limited in what he could do to continue running his highly successful construction business during his incarceration; nevertheless, the record reflects that defendant was still in a position to collect up to $300,000 in accounts receivable. And the record reflects that while claiming severe financial troubles and stating his desire to leave plaintiff penniless, defendant was asking his father to send money to a girlfriend in the Cayman Islands. On this record, although defendant was incarcerated, we are not persuaded that defendant had a legally sufficient or substantial reason in law for failing to comply with the terms of the trial court's June 21, 2019 status quo order.

Defendant's contention that the trial court unduly emphasized his fault in declining to modify the temporary order is equally unavailing.[4] Defendant asserts that the trial court improperly focused on his guilt or innocence of his charged crimes as it considered whether to modify the temporary order. This argument is not factually accurate. Instead, a review of the trial court's February 2, 2023 opinion and order reflects that the trial court simply described the circumstances of this case and the egregious behavior of defendant and his parents, particularly as they related to the trial court's evaluation of the best-interest factors under the Child Custody Act, MCL 722.21 *et seq*. Specifically, the trial court noted how the Koerber family conspired to thwart and sabotage plaintiff both financially and emotionally as she raised the couple's two children at times with little to no income while defendant was in jail. This included five separate Child Protective Services investigations against plaintiff related to abuse allegations, none of which were substantiated. The trial court also recognized that on multiple recorded jail phone calls, defendant repeatedly shared his desire to drain the marital home of its equity to ruin plaintiff financially and leave her penniless. The record therefore does not support defendant's contention that the trial court impermissibly considered fault in declining to modify the temporary status quo order.

Affirmed. As the prevailing party, plaintiff may tax costs. MCR 7.219(A).

/s/ Allie Greenleaf Maldonado
/s/ Anica Letica
/s/ Randy J. Wallace

---

[4] Although defendant raises the issue of fault in the context of the modification of the status quo order, fault is generally considered when the court divides the marital estate. *Cassidy v Cassidy*, 318 Mich App 463, 477; 899 NW2d 65 (2017).